698

BANKERS MORTGAGE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106993.   Promulgated March 2, 1943.

*J. L. Lockett, Esq.*, for the petitioner.

*Donald P. Moyers, Esq.*, and *L. R. Van Burgh, Esq.*, for the respondent.

702

704

OPINION.

BLACK, *Judge:* As has already been stated, the primary question in this proceeding is whether the transaction by which Humble paid $300,000 to petitioner in 1937 and took petitioner's nonnegotiable notes therefor and also received a transfer from petitioner of certain mineral interests, including oil and gas royalties, was a sale by petitioner to Humble, as the Commissioner has determined, or whether it was a loan by Humble to petitioner—repayable by petitioner and secured by a mortgage, as petitioner contends. If it was a loan, then of course it follows that the $300,000 in question was not income to petitioner in 1937, for it is axiomatic that bona fide loans do not constitute income.

There is no real dispute as to the facts. The decision of the question before us depends upon a construction of certain written instruments which were executed at the time the transaction was consummated. They constitute the evidence of the case except the oral testimony of F. J. Heyne, president of petitioner, who stated that it had been the policy of petitioner for many years not to sell its mineral rights in property which it owned but to lease them and retain royalties.

We think this evidence is of no great importance in this proceeding because, after all, the effect of the transactions which the parties consummated must be determined by the written contracts which they executed. This is certainly true unless there is some claim that the contracts as signed did not represent the true intent of the

parties. There is no such claim in the instant case. Heyne also testified that petitioner carried the notes which it executed to Humble as bills payable on its books and included them in its liabilities in the statements which it filed with the State of Texas in the payment of its corporate franchise tax. These facts are, of course, evidentiary, but they are not conclusive. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179.

The petitioner contends that the transaction was a loan on security, with subjoined options; the options requiring affirmative action to convert the transaction into a sale. The respondent takes the position that no loan obligation was created against the petitioner and in favor of Humble in the transaction. That, under the circumstances, the assignment of petitioner's interests in oil and gas, including reserved royalties to Humble, amounted to a sale of such interest to the latter; or at least a sale *pro tanto* of production in place in the tract involved equal in value to the amount of the loan obligation. In our opinion the record supports the respondent's version of the transaction. At the outset we take notice that the notes and deed of trust stand modified by the contract to which they are made a part. *Vinson* v. *Carter*, 161 S. W. 49. And, as so modified, they do not evidence a money loan obligation against the petitioner. A money debt is an obligation which binds the debtor to pay without condition a sum of money to another. *Gilman* v. *Commissioner*, 53 Fed. (2d) 47. A money loan implies a positive promise on the part of the borrower to repay the sum borrowed, without conditions. *In re Grand Union Co.*, 219 Fed. 353; *City National Bank Building Co.* v. *Helvering*, 98 Fed. (2d) 216.

Obviously the petitioner was not definitely committed to pay any sum of money in this transaction. On this point we need only cite the provision in paragraph 8 of the contract giving the petitioner the right at any time to absolve itself from all liabilities on the notes by surrendering the properties pledged to Humble.

Section 8 of the contract which was executed along with the execution of the note and mortgage provides, among other things, as follows:

Mortgage Company shall have the option at any time to satisfy and discharge all its liability under the terms of the notes herein described by executing and delivering to Humble, its successors or assigns, a valid written assignment and conveyance with covenants of general warranty of the interest of Mortgage Company as stated above in said 299½-acre tract; provided, that if such option be exercised at any time prior to the maturity of said notes under the terms of said notes and this instrument, Humble shall not be under any obligation to convey to Mortgage Company the fourteen ten-thousandths (0.0014) royalty on oil and gas, and the five ninths of one cent (5⁄9¢) per long ton royalty on sulphur thereafter produced and marketed by Humble from Humble's presently producing properties in the Sugarland Field, as hereinbefore provided.

In discussing the rule applicable to contracts conditioned in a similar way to the above, 41 Corpus Juris, at page 228 [§ 22] (2), among other things, says:

Obligation or Option to Pay Money. The absence of a personal obligation on the part of the grantor to pay the money, which would entitle him to a reconveyance of the property, does not furnish a conclusive test to determine whether the transaction was a mortgage or a conditional sale. But the fact that there was no covenant or promise or undertaking on his part to make such payment is evidence, entitled to considerable weight, that the conveyance was not intended as security for a debt or obligation. Hence as a general rule, if the arrangement between the parties left it optional with the grantor to pay the money and recover his land, or to abandon it to the grantee, the transaction should be held a conditional sale; but if it imposed on the grantor an obligation to make the payment, such as the grantee could enforce by an action at law or by foreclosure proceedings, it must be taken as a mortgage.

Clearly, it seems to us, the arrangement here made for discharge of the note obligations brings the transaction under the general rule stated in the above text. It seems plain that no foreclosure of the deed of trust would ever be possible or necessary by Humble because, although the deed of trust recites that the transfer is made to a trustee for security of Humble's debt, as a matter of fact there was no debt in the sense that there was an unconditional promise on the part of the Bankers Mortgage Co. to pay and Humble was put in complete possession of the mineral interests and remained so throughout the taxable years here in question.

Other provisions of the contract support the view that the petitioner was not expected to pay the notes if oil and gas production should fail on the property which Humble was operating. Thus, under paragraph 2, Humble agrees to apply recoveries from its "presently producing properties" toward liquidation of the notes, conditioned in paragraph 3, that if permanent cessation of production from and permanent abandonment of said properties occur before liquidation of all but interest on note No. 2 is complete, Humble will cancel the entire note obligation and petitioner will be released from all liability on them. This duty put upon Humble, to either liquidate out of its own production or cancel the notes if production ceased, we think, released the petitioner from all real obligation to pay them. Cf. *James Hammond*, 1 T. C. 198. Likewise the outward circumstances seem out of harmony with any theory that the petitioner would have been a borrower and Humble a lender of money in this transaction.

The petitioner is and at the time of this transaction was a mortgage loan company, engaged in the business of making loans to others. Humble is an oil company engaged in exploiting oil, gas, and mineral leases, and it is not in the business of lending money. The petitioner was not indebted to Humble; it did not, as we view it, seek a loan; and no business reason appears why it should have borrowed money

in the settlement here made. *Conway* v. *Alexander*, 7 Cranch 217. On the other hand, the presettlement situation clearly implies that Humble's business needs and not the petitioner's desire for a loan prompted the transaction. On June 9, 1937, when petitioner's directors considered Humble's so-called offer to lend it $300,000, the parties were in dispute over the manner in which Humble had been performing its obligations under the lease then owned by it on petitioner's said tract of land. Petitioner was asserting a claim against Humble based upon charges that the latter was not developing the lease with diligence, as required under its terms. Humble was then engaged in developing all of its leases in Sugarland as a single unit and was "repressuring" its wells to increase and prolong their flow. The petitioner's lease was included in Humble's development program, and it is obvious that the dispute was a handicap to Humble's free hand in carrying out its production program. The record shows that Sugarland is a shallow field where normal production is ordinarily short lived unless prolonged by "repressuring" methods. Obviously Humble needed to get rid of the petitioner and its claim that Humble was neglecting the development of petitioner's tract to enable it to go forward without interruption in its oil and gas production program in said field. It seems clear to us in view of this situation and the terms of Humble's offer, that the offer must be treated as a proposal of settlement of the pending dispute, including as a necessary part of such settlement the purchase by Humble of petitioner's interests and control in and over the lease in question, including previously reserved royalties.

Thus we view the transaction as consummated to be a sale and not a loan by Humble to petitioner of $300,000 secured by a mortgage on the oil and gas and sulphur interests which petitioner conveyed to Humble. Cf. *A. B. Watson*, 24 B. T. A. 466; affd., 62 Fed. (2d) 35; *Jefferson Gas Coal Co.*, 16 B. T. A. 1135; affd., 52 Fed. (2d) 120; *Irving Fisher*, 30 B. T. A. 433.

Among the cases cited and relied on by petitioner is the recent case of *Burger-Phillips Co.* v. *Commissioner*, 126 Fed. (2d) 934. We have carefully examined that case, as well as the other cases cited by petitioner, and we think they are distinguishable on their facts.

In the alternative, petitioner contends that, if this Court should hold that the transaction in question was a sale and not a loan and that all of the $300,000 which Humble paid to petitioner in 1937 should go into its gross income for that year, then in such event it is entitled to have allowed as a deduction a percentage allowance of 27½ percent on the $300,000 which petitioner so received.

On this point respondent contends that in order for a cash payment to qualify as an advance bonus or royalty within the import of *Palmer* v. *Bender*, 287 U. S. 551, it must be attended by a reserved royalty giv-

ing or reserving to the taxpayer an economic interest in the oil and gas in place; that in the absence of a retained royalty interest against which the cash payments may be treated as an advance, such cash payment must be regarded as consideration for the assignment of oil and gas in place which passed in the transfer. *Commissioner* v. *Fleming*, 82 Fed. (2d) 329.

We think respondent must be sustained in this contention. Treating the transaction as a sale, as we do, then petitioner reserved nothing in the contracts except the right to exercise certain options. Of course, if we had sustained petitioner's primary contention, that the transaction was a loan by Humble to petitioner of $300,000 to be paid in all events and that petitioner's mineral rights, including reserved oil royalties, were only mortgaged to Humble to secure the payment of its debt to Humble, then in each year when these royalties were collected by Humble and applied to the payment of the debt they would be petitioner's property and petitioner would be taxable on the gross amount of the royalties so applied and would be entitled to 27½ percent percentage depletion thereon and would be entitled to deduct 4 percent interest on the notes. But, since we do not sustain petitioner in its main contention, its other claims based thereon fall with it.

What we have held is that petitioner sold its mineral rights in the land, including reserved royalties, and in such a case percentage depletion is not allowable on the amount of cash consideration received. We definitely decided that question in *Alice G. K. Kleberg*, 43 B. T. A. 277. In the *Kleberg* case we held that the transfer there involved was a sale of the taxpayers' right to receive certain payments for twenty years from the lessee and that the taxpayers were taxable in 1933 on the amount of the consideration which they received in that year. We further held that, since the taxpayers sold their right to receive any of the twenty-year lease payments and parted with the title thereto, they were not entitled to percentage depletion on the cash received in 1933. We further held that, such transaction being a sale, the taxpayers were entitled to receive tax-free their entire cost basis of the property which was sold.

Undoubtedly the latter would be true in the instant case, but it seems to be conceded that petitioner had no unrecovered cost basis of the mineral rights and royalties transferred to Humble in this transaction.

In denying the taxpayer depletion on the sale payments received in the *Kleberg* case, we said:

Petitioners next contend that they are entitled to a percentage depletion allowance upon the $74,670.75 which they received from the King estate during 1933 as a result of the transactions just above discussed. They contend that the payment to them of $74,670.75 in 1933 represents a cash advanced royalty payment and as such is depletable. It seems to us that this contention can not be sustained for the reason that petitioners did not retain their right to receive three thirty-seconds of the annual rental of $127,824.60 * * *. * * * they

sold that right to the King estate * * *. [Citing cases, among them *Commissioner* v. *Fleming, supra.*]

On the strength of these authorities we do not sustain petitioner's contention that it is entitled to 27½ percent percentage depletion on the $300,000 in question.

Reviewed by the Court.

*Decision will be entered under Rule 50.*