## BANKERS MORTGAGE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10821.

Circuit Court of Appeals, Fifth Circuit.

April 26, 1944.

J. L. Lockett, of Houston, Tex., for petitioner.

Carlton Fox, Sewall Key, and Joseph M. Jones, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

In a per curiam opinion we affirmed the Tax Court, agreeing that the arrangement in question between the taxpayer and the Humble Oil & Refining Company was in substance a sale or lease and not a loan. We reached the foregoing conclusion, as did the Tax Court, from an examination only of the documents in question. We said [141 F.2d 357]: "The court looking through form to substance, regards the situation as 'a technically elegant arrangement whereby an intricate outward appearance was given to the simple sale' from the taxpayer to the Oil Company."

We further say, in response to the petition for rehearing, that, from a consideration of the so-called notes, mortgage, and the supplemental agreement, and from these instruments alone, we regard the transaction as a shrewd attempt to avoid the tax consequences on the gain from the sale of a capital asset by the Mortgage Company by the process of calling a sale a loan.

Our reasons:

1. Although a note for $100,000, due in thirty years, and a note for $200,000, due in thirty years, were purportedly secured by a mortgage on the mineral interest of the taxpayer in certain lands, and were executed by the Mortgage Company to Humble Oil & Refining Company, nevertheless, a supplemental agreement executed by the parties on the same day recited that the said notes and deed of trust did not fully express the understanding of the parties to the transaction.

2. The two notes were nonnegotiable. The so-called indebtedness was to be discharged out of a so-called percentage of

the minerals taken from these and other lands until the indebtedness was discharged in full.

3. In the event production on the land should cease before the said notes were liquidated, then the Oil Company, the alleged mortgagee, agreed to cancel the indebtedness.

4. Upon the happening of the eventualities stated in Paragraph 3 the Mortgage Company would thereupon make a deed conveying its interest in the lands to Humble. (Thus it was that the alleged notes were to be paid by the gas and oil taken from the land if the gas and oil were sufficient, but if not and production ceased, then the indebtedness was to be canceled.)

5. After thirty years from the date, or after $300,000, plus interest on the first note, had been recovered by the Oil Company, the Oil Company should have the exclusive option to purchase the Mortgage Company's interest in gas and oil by satisfying the unpaid principal, if any, and interest on the so-called indebtedness. In short after thirty years Humble was entitled to a deed upon a consideration of canceling any unpaid indebtedness. (It will be noted that the interest on note No. 2 could not be paid until after the maturity, which is after thirty years, and that at the end of thirty years interest on Note No. 2 would still be unpaid, and upon the cancellation of this interest the so-called lender would be entitled to a deed.)

6. Should the contingency in paragraph 5 happen, then the Oil Company would convey to the Mortgage Company a 14/10,-000 royalty on oil thereafter produced and saved.

7. Should Humble refuse to exercise the option provided in paragraph 5, then the Mortgage Company would have the option to require the Oil Company to take the property for the consideration stated, to-wit, the cancellation of remaining indebtedness.

8. The Mortgage Company had the option at any time to satisfy and discharge all its liability under the notes by executing to the lender an assignment of the interest of the Mortgage Company in the land in question, and if the assignment was executed before the thirty years, the Oil Company was not obligated to convey to the Mortgage Company the 14/10,000 royalty on oil, gas, and sulphur.

9. The Oil Company could carry on its operation in the field as a unit without segregating the amount of gas or other minerals taken from the mineral rights of the mortgagor in the 229 acres of its lands, and 1/180 of the portion of the oil and gas produced and saved from the entire lands of the Oil Company in that vicinity would be allocated to the account of the Mortgage Company.

10. The mortgagor withdrew any claims that it might have asserted against the Humble Company arising out of the extent or manner in which it had developed said lands and consented that they should be operated according to the sole discretion of the Oil Company.

Thus it is that:

(a) The notes and mortgage did not express the agreement of the so-called borrower and lender.

(b) The borrower did not have to pay back the amount lent.

(c) The borrower could cancel its own indebtedness if it saw fit. The indebtedness was paid wholly out of the minerals which the so-called lender was authorized to take for a period of thirty years, or perhaps indefinitely.

When the so-called borrower is not required to repay the loan, and where a lender must look to the property which the lender has authorized the borrower to take, and when the borrower may cancel the obligation at his option, the transaction is much more consistent with a sale than with a loan. The word "loan" implies an advance of money with an absolute promise to repay. City National Bank Bldg. v. Helvering, 68 App.D.C. 344, 98 F.2d 216; Ortiz Oil Co. v. Commissioner of Internal Revenue, 5 Cir., 102 F.2d 508.

Judging from the instruments alone, it appears that Humble Oil Company acquired the right to take minerals from the lands in question for thirty years, or until it got back its $300,000, with interest at four per cent, out of what would seem to be a very small retained royalty of 1/180 of the production in a given area.

The hand may be Esau's but the voice is Jacob's.

The taxpayer insists that if the transaction were a lease instead of a loan, and if the $300,000 were an advance payment of royalty, it would be entitled to the statutory depletion allowances, but our

view of the situation is that there was a sale of mineral rights with thirty years in which to take out the minerals. After that time there remains a possibility of the accrual of the 14/10,000 royalty to the taxpayer. If and when that situation materializes then the taxpayer might claim depletion, but it cannot now have depletion on that which it has sold and does not own. It has sold $300,000 worth of minerals and gotten paid therefor, and depletion belongs to the owner whose assets are being depleted, not to one who has sold those assets.

Petition for rehearing is denied.

SIBLEY, Circuit Judge, dissents.