**BANKERS MORTGAGE COMPANY,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 27396.**

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1970.

Certiorari Denied June 29, 1970.

See 90 S.Ct. 2242.

Walter P. Zivley, Carroll Shaddock, Liddell, Dawson, Sapp & Zivley, Houston, Tex., for appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., for appellee.

Before GEWIN, THORNBERRY and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

We are again called upon to determine the tax consequences of a 1937 transaction between Bankers Mortgage Company (taxpayer) and Humble Oil and Refining Company (Humble). Over a quarter of a century ago this court[1] quoted Mr. Justice Frankfurter[2] in characterizing the transaction here under scrutiny "as 'a technically elegant arrangement whereby an intricate outward appearance was given to the simple sale' from the taxpayer to the Oil Company." Apparently unburdened by the intervening years and undaunted by our prior decision affirming an exhaustive Tax Court decision, the taxpayer now argues that this court committed error years ago; and if not, new developments and facts now require a judgment in its favor.[3] Taxpayer initiated these proceed-

---

1. Bankers Mortgage Company v. Commissioner, 1 T.C. 698 (1943), aff'd, 141 F.2d 357 (5th Cir. 1944), aff'd on rehearing, 142 F.2d 130 (1944), cert. denied 323 U.S. 727, 65 S.Ct. 61, 89 L.Ed. 583 (1944).

2. Griffiths v. Commissioner of Internal Revenue, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939).

3. The position of the taxpayer does not appear to be entirely consistent and logical.

In paragraph 5 of its original and amended complaint it is alleged:

After the aforementioned litigation was concluded, Plaintiff treated the nature of said transaction in the manner so found by the Court, based upon the facts that existed in 1937. However, as of April, 1962, all facts relating to this transaction became definitely ascertainable, since at that time the options available to the parties were considered by the parties and the $200,000.00 note

ings in the United States District Court for the Southern District of Texas to recover excess income taxes paid for 1937 ($165,074.10) and 1962 ($82,587.45). The court found that a prior judicial determination rendered the 1937 claim res judicata and collaterally estopped taxpayer from asserting the 1962 claim. We affirm.

The district court made the following findings of fact: Prior to 1937, taxpayer leased its mineral rights in a 299.5 acre tract in the Sugarland Oil Field to H. C. Cockburn. The lease awarded to taxpayer certain royalties from the production of any oil or gas. Cockburn's interest under the lease was subsequently assigned to Humble.

In June 1937, taxpayer and Humble entered into an agreement which taxpayer describes as a "loan." Taxpayer received $300,000 from Humble in return for two promissory notes, one for $100,000 and the other for $200,000, payable to Humble. Both notes were due on or before June 9, 1967 and bore 4% annual interest rates. Interest on the $100,000 note was payable monthly and interest on the $200,000 note was due in a lump sum at maturity. The notes were secured by a deed of trust covering taxpayer's mineral interest in the Sugarland tract, including taxpayer's royalty interest under the Cockburn lease.

The terms of the above-described transaction were further defined by an additional agreement. It provides that the royalties (otherwise payable to taxpayer by Humble under the provisions of the Cockburn lease) will be used by Humble to repay the notes in the following order: The royalties will first be applied to the interest and principal on the $100,000 note and then to the principal of the $200,000 note. The district court summarized the additional options contained in the agreement as follows:

(a) Humble was given the option to purchase the * * * mineral interest of Bankers Mortgage at or within 20 days after the liquidation of maturity of the indebtedness. If such option were exercised, the interest due on Note No. 2 [$200,000 note] would be cancelled, and Humble was required to convey to Bankers Mortgage Company a .0014 royalty interest in oil and gas and a 5/9¢ per long ton royalty on sulphur produced by Humble in the Sugarland Oil Field.

(b) Bankers Mortgage was given the option to require Humble to exercise the option described in (a) *supra*, if Humble did not voluntarily exercise it by giving notice to Humble to that effect within 20 days of Humble's failure to exercise it.

(c) If Humble did not exercise its option to purchase the property and Bankers Mortgage did not exercise its option to require Humble to purchase the property, Bankers Mortgage could pay the remaining balance due under

---

was paid in full by Plaintiff to Humble Oil & Refining Company.

The following facts were stipulated by the parties:

After the decision in the Bankers Mortgage case referred to above, throughout the years 1937 through 1962, the taxpayer, in accordance with the earlier Tax Court decision, treated the transaction as a sale and did not include in its income the royalty payments credited against its purported indebtedness.

Notwithstanding the foregoing allegation and the foregoing stipulation of facts, the taxpayer argues otherwise in its brief. We quote from the brief:

Following the final judgment in the previous case in 1944, evidence adduced at trial in this cause reveals that the parties continued to treat the transaction as a loan, and not as a sale. Certainly all hope of achieving any "tax avoidance" was gone; any "shrewd attempt to avoid tax consequences" had failed. Yet the parties continued to treat the transaction as a loan in every respect. Humble sent to Taxpayer statements each month showing the allocation of royalties between principal and interest on the two notes. Taxpayer maintained a bills payable ledger as to each note and credited the payments on such ledgers.

Original brief pp. 27–28.

the note and secure a release of the lien.

(d) Bankers Mortgage was given the option at any time to cancel the indebtedness and interest due by conveying the full . . . mineral interest owned by Bankers to Humble.

(e) If the production from the Sugarland Field ceased and the property was abandoned by Humble before the full principal and interest payable on Note 1 [$100,000 note] was fully paid, the notes would be cancelled, and Humble would have the option to require Bankers Mortgage to convey the property to Humble under the same terms as described in (a) *supra.*

Taxpayer's 1937 income tax return described this entire transaction as a "loan." The Commissioner disagreed and assessed an income tax deficit on the theory that a portion of the $300,000 received from Humble was taxable as gain from the sale of taxpayer's mineral interest in the 299.5 acre tract. This controversy was fully litigated in the Tax Court which rendered a judgment for the Commissioner. On appeal, this court affirmed the Tax Court's decision.[4]

In spite of the tax consequences of the transaction, the parties continued to abide by their own understanding of the agreements.[5] By early 1962, the royalty payments due taxpayer under the Cockburn lease had completely paid the principal of both notes and the interest on the $100,000 note. Taxpayer then exercised its option to pay the interest ($137,389.29) on the $200,000 note and receive from Humble a release from the deed of trust lien. Taxpayer's 1962 income tax return indicates that the payment is "interest on a loan" and therefore deductible. When the Commission-

er assessed a tax deficiency based on the improper interest deduction, taxpayer paid the assessment and initiated these proceedings claiming a refund for excess taxes paid, not only for 1962, but also for 1937.

### *The 1937 Claim*

Taxpayer contends that the trial court erred in denying its claim for refund of a portion of its 1937 income taxes. It attempts to avoid the fatal impact of the doctrine of res judicata by seeking relief from the prior judgment under Rule 60(b) (6) of the Federal Rules of Civil Procedure.[6] In the alternative, taxpayer suggests that relief may properly be awarded by considering taxpayer's claim an "independent action to relieve a party from a judgment."[7]

The purpose of Rule 60(b) is to define the circumstances under which a party may obtain relief from a final judgment. The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of *all* the facts. In its present form, 60(b) is a response to the plaintive cries of parties who have for centuries floundered, and often succumbed, among the snares and pitfalls of the ancillary common law and equitable remedies. It is designed to remove the uncertainties and historical limitations of the ancient remedies but to preserve all of the various kinds of relief which they offered.

Rule 60(b) contemplates two distinct procedures for obtaining relief from a final judgment. The first is by motion. 60(b) is directly involved in

---

4. *See* note 1, *supra.*

5. *See* note 3, *supra.*

6. 60(b) provides in pertinent part:
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons * * * (6) any

other reason justifying relief from the operation of the judgment.

7. Where the adverse party is not prejudiced an independent action for relief may be treated as a 60(b) motion, and conversely, a 60(b) motion may be treated as the institution of an independent action.

this procedure as it provides (a) the authority to secure relief by motion, (b) the time limitations within which the motion must be filed, and (c) the grounds on which relief can be predicated. This procedure is intended to completely replace the ancillary common law and equitable remedies of coram nobis, coram vobis, audita querela, bill of review and bill in the nature of a bill of review,[8] which are specifically abolished by this rule. The motion for relief from final judgment must be filed in the district court and in the action in which the original judgment was entered.[9] No independent jurisdictional ground is necessary because the motion is considered ancillary to or a continuation of the original suit.[10] Obviously a 60(b) motion addressed to a United States District Court is not the proper vehicle for securing relief from a decision of the Tax Court.

■ The second procedure contemplated by Rule 60(b) is an independent action to obtain relief from a judgment, order, or proceeding. The first saving clause specifically provides that 60(b) does not limit the power of the court to entertain such an action.[11] It is important to emphasize that "independent action," as used in this clause, was meant to refer to a procedure which has been historically known simply as an independent action in equity to obtain relief from a judgment.[12] This action should under no circumstances be confused with *ancillary* common law and equitable remedies or their modern substitute, the 60(b) motion.[13]

When a court grants relief from a judgment or decree by a new trial or rehearing, or by one of the ancillary common law or equitable remedies or their modern substitute, a motion, it is exercising a *supervisory power* of that court over its judgment; but the original bill, or independent action, to impeach for fraud, accident, mistake or other equitable ground is founded

8. Advisory Committee Note of 1946 to Subdivision (b) of Rule 60, reprinted in 6A J. Moore, Federal Practice & Procedure § 60.01[8] (2d ed.) (hereinafter, Moore's Federal Practice) ; 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1321 (Rules ed. 1960) ; 7 Moore's Federal Practice § 60.27[1], at 294, & § 60.18[8].

9. Advisory Committee Note of 1946 to Subdivision (b) of Rule 60, reprinted in 6A Moore's Federal Practice § 60.01[8]. One possible exception to this rule occurs when the judgment of one district court is registered in another district or other districts. *See* 7 Moore's Federal Practice § 60.28[1].

10. 7 Moore's Federal Practice § 60.28[1] & [3].

11. The saving clauses of 60(b) provide : This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. Section 1655, or to set aside a judgment for a fraud upon the court.

In the instant case, we are concerned only with the first saving clause which relates to the independent action.

12. For an excellent analysis of the scope and purpose of the *saving clauses* of 60 (b), see 7 Moore's Federal Practice §§ 60.31–60.35. The scope of the saving provisions of 60(b) as it now applies should not be confused with the saving provisions of *original* 60(b) which was amended on December 27, 1946 becoming effective on March 19, 1948. A good discussion of the scope of the saving provisions of *original* 60(b) can be found in 7 Moore's Federal Practice §§ 60.11, 60.12, *et seq*. The independent action in equity preserved by the first saving clause of 60(b) is discussed in detail in 7 Moore's Federal Practice §§ 60.36–60.40.

13. Advisory Committee Note of 1946 to Subdivision (b) of Rule 60 reprinted 6A Moore's Federal Practice § 60.01 [8], provides : If the right to make a *motion* is lost by the expiration of the time limits fixed in these rules, the only procedural remedy is by a new or independent action to set aside a judgment *upon those principles which have heretofore been applied in such an action*. [Emphasis added.]

upon an *independent and substantive equitable jurisdiction.* [Emphasis added.] [14]

██ The essential elements of the independent action were outlined by the Eighth Circuit in National Surety Co. v. State Bank:

(1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of defendant; and (5) the absence of any adequate remedy at law.[15]

In the instant case taxpayer never intimates that mistake, accident or fraud prevented its presentation of a meritorious defense in the original proceeding. Similarly, we are totally unable to understand why "equitable considerations" require that the effect of the judgment be compromised.

██ In essence, the taxpayer is arguing that because it has strictly abided by the terms of the 1937 agreement, it should have an opportunity to relitigate the issue resolved by the 1943 Tax Court decision. The independent action can not be made a vehicle for the relitigation of issues. Courts have consistently held that a party is precluded by res judicata from relitigation in the independent equitable action issues that were open to litigation in the former action where he had a fair opportunity to make his claim or defense in that action.[16] The district court acted correctly in denying relief from the prior judgment and dismissing taxpayer's 1937 claim.

### The 1962 Claim

██ Taxpayer contends that the 1962 payment to Humble was made pursuant to the terms of the 1937 "loan" agreement and is therefore properly deductible under § 163(a) I.R.C., which provides:

(a) General rule.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

The district court held that the 1943 decision of the Tax Court, as affirmed by this court, collaterally estops taxpayer from relitigating the question raised by this claim. Taxpayer argues that the doctrine of collateral estoppel, as restricted in Commissioner of Internal Revenue v. Sunnen,[17] was erroneously applied to the 1962 claim. In that case the Court stated:

[W]here two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.[18]

The doctrine should not be applied in the instant case, according to taxpayer, be-

14. 7 Moore's Federal Practice § 60.36.

15. 120 F. 593, 599, 61 L.R.A. 394 (8th Cir. 1903). See, Chicago, R. I. & P. R. Co. v. Callicotte, 267 F. 799, 16 A.L.R. 386 (9th Cir. 1920), cert. denied 255 U.S. 570, 41 S.Ct. 375, 65 L.Ed. 791 (1921).

16. American Surety Co. v. Baldwin, 287 U.S. 156, 166 & 167, 53 S.Ct. 98, 77 L.Ed. 231 (1932); Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719 (1923); American Bakeries Co. v. Vining, 80 F.2d 932 (5th Cir.

1936) (action to obtain relief from state judgment on ground of fraud properly dismissed where state Supreme Court, while asserting that it had power to order a new trial because of the fraud, refused to do so). See 7 Moore's Federal Practice § 60.37[1], at 623.

17. 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

18. 333 U.S. 591, 599–600, 68 S.Ct. 715 (1948).

cause (a) the matter raised is not identical with that decided in the first proceeding, and (b) there has been a substantial intervening change in the controlling facts and applicable legal principles.

We are convinced that the 1943 decision and the claim presently before us involve precisely the same issue: Was the 1937 transaction a bona fide loan? The only real distinction is that the earlier decisions involved "proceeds" of the alleged loan while the instant claim concerns "interest" on the alleged loan. In both situations, the taxpayer's contention is grounded on the proposition that the 1937 transaction was a genuine loan.

Taxpayer also argues that a change in controlling legal principles prevents the application of collateral estoppel. This contention is based solely on Treasury Regulation 1.163–1(b), which provides:

> Interest paid by the taxpayer on a mortgage on real estate upon which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness.

Taxpayer explains that the general principle, devolving from this regulation, does not require a taxpayer to be directly liable on a bond or note secured by a mortgage in order for interest paid on the mortgage to be deducted as interest on indebtedness under § 163. Assuming that taxpayer's interpretation is correct, he has nevertheless failed to prove that a change has occurred in a controlling legal principle. The regulation presumes the existence of the essential elements of the interest payment, a bona fide indebtedness and a true mortgage, and it may very well announce a changed legal principle when those prerequisites are present. However, the issue presented by the instant claim is *whether* the essentials of a genuine interest payment exist. The regulation does not announce a new legal principle which would be relevant in resolving that inquiry.

Taxpayer's final contention, that a "change in controlling facts" has occurred, is also without merit. The facts which have changed, according to taxpayer, are: (1) Taxpayer has continued to treat the 1937 transaction as a loan, often to its own material detriment; and, (2) taxpayer made an "interest" payment of $137,389.29 in 1962 as required by the "loan" agreement. While both of these facts would be relevant in a de novo consideration of the nature of the 1937 transaction, they are by no means controlling. The apparent pertinence of point (2) results from the taxpayer's use of conclusory terms. Correctly stated, taxpayer made a payment of $137,389.29 in 1962 in accordance with the 1937 agreement. The fact of payment is not controlling in determining the character of the payment— whether it is interest on a genuine loan. In addition, the first point does not appear to present a *changed* fact. Taxpayer instead is saying that its attitude toward and treatment of the 1937 agreement has remained unchanged in spite of the original suit.

Taxpayer insists that the 1962 payment has additional significance in that the earlier decision of this court was based on the erroneous assumption that the 1937 agreement was complete and that the future "interest" payment could *not* occur. We find no basis for this assertion. In its 1943 decision, this court carefully outlined ten reasons for its conclusion that the 1937 transaction was not a loan. Not one of these includes such an assumption. This court summarized the reasons underlying its decision in the following manner:

> When the so-called borrower is not required to repay the loan, and where a lender must look to the property which the lender has authorized the borrower to take, and when the borrower may cancel the obligation at his option, the transaction is much more consistent with a sale than with a loan. The word 'loan' implies an ad-

vance of money with an absolute promise to repay.[19]

This statement should be considered to forever resolve the issue. The 1937 transaction was not a loan agreement and taxpayer may not relitigate that question.

Affirmed.

19. Bankers Mortgage Company v. Commissioner of Internal Revenue, 142 F.2d 130, 131 (1944).