GEORGE B. and BERNELL L. CRABTREE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crabtree v. Commissioner
Docket No. 7985-78.
United States Tax Court
T.C. Memo 1984-450; 1984 Tax Ct. Memo LEXIS 224; 48 T.C.M. (CCH) 948; T.C.M. (RIA) 84450; August 27, 1984. *224 During 1973, 1974, and 1975, P engaged in transactions involving investments in silver and made large bank deposits.P filed returns for 1973 and 1974 but did not file a return for 1975. The Commissioner, using the bank deposits method, determined that P had unreported income during each of the years in issue. Held:
(1) P has failed to prove that he did not have unreported income during the years in issue as determined by the Commissioner in his revised bank deposits analysis. (2) P is liable for the addition to tax for negligence under sec. 6653(a), I.R.C. 1954, for 1973, 1974, and 1975. (3) P is liable for the addition to tax for failure to timely file an income tax return under sec. 6651(a), I.R.C. 1954, for 1975. (4) P is liable for the addition to tax for failure to pay estimated tax under sec. 6654, I.R.C. 1954, for 1975. George B. Crabtree, pro se. Theodore Garelis, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
Petitioner
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
I.R.C. 1954
Mr. and Mrs.
1973
$206,037.55
$10,301.88
Crabtree
1974
606,585.00
30,329.25
Mr. Crabtree
1975
169,838.00
$42,459.00
8,492.00
$7,334.00
Mrs. Crabtree
1975
169,594.00
42,399.00
8,479.00
7,323.00
After concessions by the Commissioner, the *226 issues for decision are: (1) Whether the petitioners had unreported income during 1973, 1974, and 1975 and determined by the Commissioner using the bank deposits method; (2) whether the petitioners are liable for the addition to tax for negligence under section 6653(a) for 1973, 1974, and 1975; (3) whether the petitioners are liable for the addition to tax for failure to timely file income tax returns under section 6651(a) for 1975; and (4) whether the petitioners are liable for the addition to tax for failure to pay estimated tax under section 6654 for 1975. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, George B. and Bernell L. Crabtree, are husband and wife, who maintained their legal residence in Paradise, Calif., when they filed their petition. They timely filed joint Federal income tax returns for the years 1973 and 1974 with the Internal Revenue Service Center, Fresno, Calif. They have not filed an income tax return for 1975. Mr. Crabtree will sometimes be referred to as the petitioner. The petitioner *227 and his family moved to Paradise in 1972, at which time he was an interior decorator. To increase his income, he became involved in selling silver. He also devised other silver investment transactions. During the years in issue, the petitioner received money from his investors pursuant to several different types of silver investment agreements. At the trial, the parties introduced copies of 15 different contracts, 13 of which bore dates during the years in issue. Although the contracts vary in some particulars, the 13 relevant agreements are variants of 4 basic types. The first type may be denominated the "future delivery" contract. Under such agreements, the petitioner received money on the contract date for a specific amount of silver to be delivered to the investor at the end of 1 year. The amount of money that the petitioner received was equal to the price of the silver on the contract date. At the end of the year, the investor could elect to receive the silver or its value at such time. The petitioner promised to make periodic payments during the year of a specified percentage of the amount that he had received. In other variants of the future delivery contract, the *228 petitioner guaranteed a specified rate of silver appreciation during the year, or offered the investor the opportunity to participate in appreciation of the gold and silver mining stocks that the petitioner owned, in lieu of the periodic payments, or he granted the investor an option to buy more silver. A final variant consisted of a sale a silver by the petitioner to the investor immediately followed by the petitioner's renting the silver back from the investor for 1 year. In such case, the periodic payments were denominated "rent." In form, some of the future delivery contracts were loans from the investor to the petitioner, and others were purchases of silver by the investor. The future delivery contracts included the "Twelve Per Cent Silver Loan Agreement," "Silver Loan 'Stock Profit' Agreement," "Eighteen-Plus Silver Program," "Silver Rental Agreement," "'High Return' Silver Program," "Silver Purchase Agreement," and "Silver Purchase Agreement 1% Per Month Program." A second type of silver investment agreement was denominated the "Twelve-Plus Silver Program." Under such agreement, the petitioner received full payment for the silver, which he then delivered to the investor. *229 However, the petitioner agreed to repurchase the silver after 1 year for the amount paid by the investor at the investor's election. Additionally, the petitioner agreed to make payments of 1 percent per month of the "purchase price." A third type of silver investment agreement was called the "Silver Deposit Agreement." The agreement provided that, in return for a downpayment of 10 or 25 percent of the total purchase price, the petitioner agreed to store or "put on option" a specified amount of silver for 1 year. During the year, the investor could pay the balance of the contract price and take delivery of the silver. At the end of the year, the investor could request that the silver be sold and that the profits and deposit be paid to him, or the investor could purchase that portion of the silver represented by the down-payment, or the investor could extend the agreement for another year. The fourth type of silver investment agreement was called the silver loan (or purchase) agreement with option. Under such agreements, the investor purchased a specified amount of silver from the petitioner or "loaned" the purchase price to the petitioner, keeping the silver as collateral. The *230 investor could take delivery of the silver or store it with the petitioner. At any time during the year, the investor could purchase the silver, or an additional amount of silver, at its price on the contract date. The investor could also have the silver sold, or he could keep it in full satisfaction of the "loan." The petitioner used a variety of agreements during the years in issue because he found that certain agreements did not attract enough investors or because he was losing money on a particular type of contract. On one occasion, he invested money that he received from his investors with a coin dealer in Chicago, who subsequently went bankrupt. The petitioner experienced difficulty making the periodic payments called for by his contracts, and he used the proceeds from subsequent silver sales to pay the "interest" due on such contracts. The petitioner continued to sell silver during the years in issue. On his income tax return for 1973, the petitioner reported gross receipts of $188,135.82, cost of goods sold of $159,615.54, and a net profit of $7,843.16, which profit he reported as income. On his income tax return for 1974, the petitioner reported gross receipts, less *231 returns, of $202,126.00, cost of goods sold of $4,403.00, and expenses for "rentals-interest-profits" of $212,311.00. The return reported a net loss and showed no tax owed. In his notices of deficiency, the Commissioner determined that the petitioner had unreported income for each of the years in issue. He reconstructed the petitioners' income using the bank deposits method. Based upon records and information supplied by the petitioner after the issuance of the notice of deficiency, the Commissioner revised the bank deposits analysis, substantially reducing the deficiencies for each year. The Commissioner also determined that the petitioner was liable for the addition to tax for negligence under section 6653(a), for each of the years in issue, as well as for the additions to tax for failure to timely file a return under section 6651(a), and for failure to pay estimated tax under section 6654, for 1975. OPINION The first issue for decision is whether the petitioner had unreported income during 1973, 1974, and 1975 as determined by the Commissioner using the bank deposits method. It is well established that the Commissioner may prove the existence and amount of unreported income *232 by any method that will, in his opinion, clearly reflect the taxpayer's income. Sec. 446(b); Holland v. United States,348 U.S. 121, 130-132 (1954); Davis v. Commissioner,239 F.2d 187, 189 (7th Cir. 1956), affg. a Memorandum Opinion of this Court; Harper v. Commissioner,54 T.C. 1121 (1970). The use of bank deposits has long been an accepted method of proving income. Goe v. Commissioner,198 F.2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court; Halle v. Commissioner,175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Hague Estate v. Commissioner,132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Mauch v. Commissioner,113 F.2d 555 (3d Cir. 1940), affg. 35 B.T.A. 617 (1937); Nicholas v. Commissioner,70 T.C. 1057 (1978); Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Harper v. Commissioner,supra.
The petitioner does not specifically challenge the Commissioner's use of the bank deposits method. *233 Rather, the petitioner argues that his bank deposits represent the proceeds of loans that his investors made to him rather than gross receipts from the sale of silver. The petitioner bears the burden of proving his contention. Rule 142(a), Tax Court Rules of Practice and Procedure[2]; Welch v. Helvering,290 U.S. 111 (1933). The exact nature of all the income-producing activities carried on by the petitioner during the years in issue is far from clear. The petitioner began in the silver business as a salesman, and he soon developed his investment contracts. However, he continued to sell silver during the years in issue. In his testimony, he stated that he had used the proceeds from silver sales to meet his obligations under the earlier contracts. In his brief, the petitioner conceded that he used his contracts to obtain money in order to buy silver for resale. Much of the mystery surrounding the petitioner's business transactions is attributable to his lack of records documenting such transactions. The only such evidence before us consists of copies of 13 of the investment *234 contracts used by the petitioner during the years in issue, the Commissioner's revised bank deposits analysis, and an analysis prepared by the petitioner's accountant specifying, for 1974 only, the petitioner's receipts attributable to the various types of contracts that the petitioner entered into that year. Such analysis was based on the work papers of the Commissioner's examining agent. The petitioner did not present us with an analysis of his individual transactions, nor did he introduce any books and records to refute the Commissioner's analysis. Subsequent to the issuance of the notices of deficiency, the petitioner did supply certain information to the Commissioner that the Commissioner used to revise his bank deposits analysis, substantially reducing the claimed deficiencies. In his revised analysis, the Commissioner reduced the amount of total deposits for each year by an amount for "loans," and he reduced total deposits for 1973 and 1974 by large amounts representing silver purchases, contract repayments, and interest. We have concluded that the petitioner has failed to prove that the Commissioner's revised analysis is incorrect.It is clear from this record that the *235 petitioner engaged in outright silver sales during the years in issue, although the volume of such sales is not clear. Thus, the petitioner's bank deposits during such years were not entirely attributable to whichever of his silver agreements may have been true loans. Additionally, there is no evidence at all concerning the receipts attributable to the various types of silver agreements for 1973 and 1975, and we cannot say what portions of the deposits in such years were attributable to the agreements rather than to outright sales. Moreover, the analysis prepared by the petitioner's accountant showing the receipts attributable to the various silver agreements in 1974 reveals that the bulk of the petitioner's receipts on the contracts were attributable to those contracts that were sales in form. We are skeptical of the petitioner's belated attempt to repudiate the form of the agreements that he drafted.Cf. Ledoux v. Commissioner,77 T.C. 293, 308 (1981), affd. per curiam 695 F.2d 1320 (11th Cir. 1983); Lucas v. Commissioner,58 T.C. 1022, 1032 (1972). Nor has the petitioner proved that the agreements that were sales in form constituted *236 true loans. An essential element of a loan is the existence of a good faith intent on the part of the recipient of the funds to repay the amount borrowed without condition and a good faith intent on the part of the person advancing the funds to enforce repayment. Moore v. United States,412 F.2d 974, 978 (5th Cir. 1969); Fisher v. Commissioner,54 T.C. 905, 909-910 (1970); Bankers Mortgage Co. v. Commissioner,1 T.C. 698, 705 (1943), affd. per curiam 141 F.2d 357 (5th Cir. 1944); see also Bankers Mortgage Co. v. United States,423 F.2d 73 (5th Cir. 1970). Such intent is not evidenced by the copies of the "sales" agreements submitted to us. Finally, even if we were satisfied that some portion of the petitioner's receipts for the years in issue constituted loans, the petitioner has not proved that the Commissioner's revised bank deposits analysis failed to account adequately for loans for each year in issue. In addition, for 1973 and 1974, the Commissioner credited the petitioner with amounts for contract repayments. It thus appears that any loans that may have been included among the bank deposits were *237 subsequently removed. [3] The petitioner has not shown that he received loan proceeds greater than the amounts for which the Commissioner gave him credit. For all the reasons set forth above, we sustain the determination of the Commissioner, as revised, with respect to this issue. The petitioner introduced no evidence with respect to the addition to tax for negligence (section 6653(a)) for 1973, 1974, and 1975, the addition to tax for failure to file timely an income tax return for 1975 (section 6651(a)), and the addition to tax for failure to pay estimated tax for 1975 (section 6654). Nor did the petitioner address such issues in his brief. Since the petitioner bears the burden of proof with respect to such issues ( Bixby v. Commissioner,58 T.C. 757, 791 (1972) --section 6653(a); BJR Corp. v. Commissioner,67 T.C. 111, 130 (1976) -- section 6651(a); Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980) *238 --section 6654), and since he has utterly failed to address them, we have no choice but to sustain the Commissioner's determination with respect to such issues. [4]
To reflect concessions by the Commissioner, Decision will be entered under Rule *239 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
3. The acceleration of recognition of income that might thus occur where loan proceeds were deposited in one year and not repaid until a subsequent year is unfortunate but is also unavoidable given the petitioner's failure to documents his transactions.↩
4. In his brief, the petitioner submitted a number of documents that had not been offered or admitted into evidence at the trial. Our decisions can only be based upon the evidence in the record; materials submitted with a brief but not submitted at trial are not evidence and cannot be considered. Rule 143(b); West 80th Street Garage Co. v. Commissioner,12 B.T.A. 798 (1928); Lyon v. Commissioner,1 B.T.A. 378 (1925). Additionally, the petitioner appeared to renounce his tax protect arguments at the trial, but he renewed such frivolous contentions in his brief. Such arguments are entirely without merit. See United States v. Buras,633 F.2d 1356, 1361 (9th Cir. 1980); Wilkinson v. Commissioner,71 T.C. 633↩ (1979). In view of the amounts of the deficiencies and additions involved, the petitioner would have been will advised to take these proceedings more seriously.