Donald P. STARNS, in his capacity as Trustee for Rodney D. Hendrick, Chapter 11 Debtor, and Rodney D. Hendrick

v.

H.E. AVENT, et al.

Civ. A. No. 86–86–B.

United States District Court,
M.D. Louisiana.

Jan. 24, 1989.

See also, Bkrtcy., 56 B.R. 280.

Randall A. Smith, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La.,

John L. Avant, Avant & Falcon, Baton Rouge, La., Russ M. Herman, Herman, Herman, Katz and Cotlar, New Orleans, La., Steven J. Lane, Matthew P. Chenevert, and R. Wayne Byrd, pro hac vice, for defendants.

John C. Lindsay, Bennettsville, S.C., in pro per.

POLOZOLA, District Judge:

Rodney D. Hendrick filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on November 21, 1983 in the Bankruptcy Court for the Middle District of Louisiana.[1] Donald P. Starns was appointed trustee of the debtor's estate. During the course of these proceedings the attorney for the trustee filed an application with the bankruptcy court seeking authority to sell 310 shares of stock which Hendrick owned in PFC, Inc. d/b/a Stingray Boat Company ("Stingray").

Stingray is a South Carolina corporation which is engaged in the manufacture and distribution of recreational boats. Hendrick filed an objection to the sale of his Stingray stock. The bankruptcy judge conducted an adversary hearing and on February 13, 1985 authorized and confirmed the sale of Hendrick's stock in Stingray to James A. Fink, Jr. Immediately after the hearing on February 13, 1985, Hendrick's stock was delivered to James A. Fink, Jr. and the trustee received $150,000 which was paid by a cashier's check drawn on a South Carolina bank. As further consideration for this transaction, Hendrick was dismissed as a party in a suit which had been filed against him in the Court of Common Pleas for the County of Darlington, South Carolina by Francis A. Collins, who was an officer, stockholder and director of Stingray.

On February 14, 1985, the trustee filed an application with the bankruptcy court seeking to employ special counsel to investigate the circumstances surrounding the February 13, 1985 stock sale. Numerous depositions, which were authorized by the bankruptcy court under Bankruptcy Rule 2004, were taken in connection with this investigation. At no time did the trustee, Hendrick, or any other party to the bankruptcy proceeding file an appeal or any other post trial motions under Rules 52(b), 59(d), (e) or 60(b) of the Federal Rules of Civil Procedure to overturn, vacate or modify the February 13, 1985 judgment of the bankruptcy court. The trustee filed this suit on February 12, 1986 on behalf of Hendrick.

The original complaint was filed under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"), the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and the Rules and Regulations of the Securities and Exchange Commission, including without limitation 10 B–5 (17 C.F.R. § 240.10 B–5). Named as defendants in the original complaint were the following parties: H.E. "Bobby" Avent, Sr. and his son, Mark S. Avent, directors of Stingray since January 31, 1985, and two of the ultimate purchasers of Hendrick's stock; Brantley T. Burnett; W.J. Kinney, a director of Stingray after February 13, 1985 and one of the ultimate purchasers of Hendrick's stock; James A. Fink, Jr., an owner, director, and president of Stingray from 1979 through the date of the filing of this complaint; Deborah W. Fink, the wife of James A. Fink, Jr. who was a director and the secretary-treasurer of Stingray during the negotiations for the purchase of Hendrick's stock; and John C. Lindsay. The plaintiff filed a second amended complaint on November 6, 1987 which added several state law claims, based on misrepresentations,

---

1. In Rodney D. Hendrick, No. 83–00787.

622

omissions, breach of fiduciary duty and rescission of contract.

The defendants have filed a motion to dismiss and, in the alternative, a motion for summary judgment.[2] Defendants base their motion on the following grounds:

(a) This suit is an impermissible collateral attack on a final judgment rendered by the bankruptcy court on February 13, 1985 to which no appeal was taken;

(b) Private rights of action to enforce Rule 10b–5 and RICO claims do not lie with regard to the sale and purchase of securities in an exchange approved by a court;

(c) Plaintiff's second amended complaint cannot be construed as a Rule 60(b) motion under the Federal Rules of Civil Procedure, and even if it is considered as a Rule 60(b) motion, the motion is not timely;

(d) James A. Fink, Jr. is absolutely immune from civil liability for any misstatement or omission as a witness in the bankruptcy court; and

(e) The order of the bankruptcy court is res judicata.

The plaintiff has filed an opposition to the defendants' motion. Plaintiff contends he does have the right to bring the pending action even though no appeal was taken by the bankruptcy court because the bankruptcy court has authorized the current suit. Plaintiff further contends that the Court should change the judgment entered by the bankruptcy court on February 13, 1985 under Rule 60(a) of the Federal Rules of Civil Procedure to clearly reflect this fact. Plaintiff also argues that his second amended complaint should be considered as a Rule 60(b) motion. Should the Court consider the second amended complaint as a Rule 60(b)(3) motion, plaintiff contends the motion is timely filed because the amendment relates back to the date the original complaint was filed. Finally, plaintiff contends the Court should treat his second amended complaint as a Rule 60(b)

motion alleging the defendants committed a fraud on the bankruptcy court.

For reasons which follow, the Court finds that defendants' motion to dismiss or in the alternative for summary judgment should be granted.

I. Background:

Stingray was formed on March 19, 1979. Its headquarters is located in South Carolina. When the corporation was formed, 100 shares of stock at $10.00 par value were issued. Additional funds which were necessary to form the corporation came from a secured loan from Louisiana National Bank in Baton Rouge. Hendrick received ten shares of stock and Herb Polk, James A. Fink, Jr., and Francis A. Collins received thirty shares each. At the time the corporation was formed, Hendrick was married to Judy Polk, who was Herb Polk's daughter. Hendrick and his wife were divorced on April 15, 1983. James A. Fink, Jr., Hendrick and Collins were the initial directors of Stingray and served as president, vice president and secretary-treasurer, respectively. On June 12, 1981, a stockholders meeting was held in Hartsville, South Carolina. During this meeting, Stingray was authorized to issue 3,000 shares of common stock at $10.00 par value. Herb Polk received 1,800 shares of this stock, James A. Fink, Jr. received 900 shares, and Hendrick received 300 shares. Thus, the ownership of Stingray was as follows:

|  | Pre–Issue | Post–Issue |
| --- | --- | --- |
| Herb Polk | 30% | 59% |
| James A. Fink, Jr. | 30% | 30% |
| Collins | 30% | 01% |
| Hendrick | 10% | 10% |

At the June 12, 1981 meeting, Collins was removed as a director of Stingray and was replaced by Herb Polk.

Stingray held another stockholders meeting on April 21, 1983. At this meeting, Judy Polk replaced Hendrick as a director and vice-president of the company. The board of directors also included James A. Fink, Jr., Debbie Fink and Herb Polk. The

**2.** This is the second time the defendants have filed this motion. The Court denied the first motion which was based on the same grounds.

board named James A. Fink, Jr. as president, Judy Polk as vice-president, and Debbie Fink as secretary-treasurer.

On October 23, 1983, Collins filed a suit in the Court of Common Pleas for the County of Darlington, South Carolina (No. 83–CP–16–570) seeking equitable and monetary relief from Stingray, James Fink, Herb Polk, and Hendrick. Collins contended in his suit that there were various irregularities and improprieties committed by these defendants in connection with the June 12, 1986 stock issue of Stingray.[3] Collins was represented in the South Carolina suit by James M. Saleeby, Edward E. Saleeby and John J. James II. The defendants in the South Carolina suit were represented by Lindsay and Henry Hammer.

On November 21, 1983, Hendrick filed his Chapter 11 petition with the bankruptcy court for the Middle District of Louisiana. The bankruptcy court authorized the trustee to retain the services of John M. Milling, a South Carolina attorney, to represent the interest of the trustee in Collins' South Carolina lawsuit. Milling then filed an amended answer and a cross-claim against James A. Fink, Jr., Herb Polk, and Stingray.

During this time Dwight Holder and Gil Walker, two individuals who were interested in purchasing a controlling interest into PFC, Inc., received and reviewed certain financial information of the company. They were assisted in this investigation by Raymond Mosteller, a certified public accountant. In September of 1984, Lindsay and Ed Saleeby met with Mosteller and Holder. In November of 1984, Lindsay informed H.E. Avent, Sr., Don Wason, and Brantley Burnett of Stingray and suggested to them that this was a good investment which they should consider. Thereafter, these parties and their certified public accountants made examinations of the financial records of the company. After this investigation was completed, H.E. Avent, Sr. and Burnett indicated that they had an interest in acquiring a controlling interest

in Stingray. After visiting the boat company and reviewing financial information, H.E. Avent, Sr. contacted South Carolina National Bank ("SCN") about financing a purchase of 70% of the stock. On December 21, 1984, James A. Fink, Jr. travelled to Baton Rouge, paid off a Stingray loan at Louisiana National Bank and received from the bank certain stock certificates pledged to secure the loan. James A. Fink, Jr. also delivered Hendrick's stock certificate to the trustee on this date. On December 22, 1984, a meeting was held in the office of Edward Saleeby wherein a release was executed and Collins delivered his stock certificate in Stingray endorsed in blank and received a check from SCN for $200,000. Arrangements were also made at this meeting for the immediate wire transfer of $650,000.00 to Collins' account in a bank in Nashville, Tennessee. Less than a week later, H.E. Avent, Sr., Brantley Burnett, W.J. Kinney and Mark S. Avent obtained a loan from SCN in the amount of $1,994,-000.00, which loan was, in part, for the refinancing of a $1,050,000.00 loan and paying for an $800,000.00 transfer of funds to Herb Polk. The corporation, through James A. Fink, Jr., certified as part of the December 28, 1984 loan agreement that the ownership of the stock in PFC, Inc. would not be altered without the approval of SCN.

In January of 1985, James A. Fink, Jr. became concerned about the delay in receiving his money. He telephoned Lindsay, the Avents and John Milling. During the same month, James A. Fink. Jr. and his wife sought to purchase a beach house in Myrtle Beach, South Carolina for approximately $320,000. The Finks sought to determine whether they would have to borrow funds for this house or could pay for the beach house in cash. On January 9, 1985, James A. Fink, Jr. went to the Bank of Hartsville to borrow $200,000.00 for the beach house and signed a financial statement showing as an asset a "note payable" for $750,000.00 due January 11, 1985, and as a liability an attorney's fee payable in

---

**3.** As will be discussed hereinafter, Collins has also filed a suit in the Middle District of Louisiana. *Collins v. Polk,* CA 85–1165–B (M.D.La.

1985). This suit arises out of the settlement of the South Carolina litigation and the sale of Collins' stock in Stingray.

the amount of $75,000. This $75,000.00 attorney's fee was payable to Lindsay.

The Bankruptcy Court for the Middle District of Louisiana then became involved in these transactions. On February 7, 1985, David Rubin, on behalf of the trustee, filed an application to sell Hendrick's stock in Stingray. A hearing on the trustee's application was set for February 13, 1985. On the day of the hearing,[4] Hendrick's attorney filed an objection to the sale. Present for the hearing were Donald Starns, the trustee; David Rubin, attorney for the trustee; William E. Steffes, attorney for the debtor; Samera Abide, attorney for Judith Polk; and, James A. Fink, Jr. who testified as a witness. Although Hendrick filed an objection to the sale of stock, Judy Polk waived any rights she had in the stock and advised the bankruptcy court she had no opposition to the sale. The attorney for the trustee advised the court that although he had "some concerns about the manner in which the offer was made and has some concern that the trustee is not receiving the equivalent value to that received by other shareholders of PFC, Inc.," the offer should be accepted "under the circumstances."[5] The bankruptcy court, after conducting the hearing, approved the sale of the stock over the debtor's objection. A minute entry was filed in the record by the court on February 13, 1985. The court also signed a judgment on February 13, 1985 which provided:

> This matter came up for hearing on Application by Donald P. Starns, Trustee, seeking authority to sell stock free and clear of all liens, claims, and encumbrances, including co-owner's rights, and to dismiss litigation.

> CONSIDERING the Application, the record of this case, the evidence presented, the stipulation of counsel for Judith Polk Hendrick, good grounds appearing therefor, for reasons orally assigned;

> IT IS HEREBY ORDERED that Donald P. Starns, is hereby authorized to sell all of the estate's shares of stock in PFC, Inc., said sale to be free and clear of all liens, claims, and encumbrances, including any and all alleged co-owner's rights or right of first refusal of Judith Polk Hendrick.

> IT IS FURTHER ORDERED that Donald P. Starns, Trustee, is hereby authorized to execute any and all documents in conjunction with the sale, to endorse and deliver the stock, to dismiss the cross-complaint referenced in the Application, and do any and all other matters in order to effectuate its intents and purposes of this Order.

Immediately after the hearing on February 13, 1985, Hendrick's stock was delivered to James A. Fink, Jr. with the name of the purchaser left blank pursuant to the instructions of H.E. Avent, Sr. The $150,-000.00 purchase price was paid by a cashier's check which had been obtained from SCN. On February 14, 1985, the trustee filed a supplemental application for authority to employ special counsel to conduct an investigation concerning the circumstances surrounding the offer received by the trustee for the purchase of Hendrick's interest in Stingray. On April 19, 1985, the trustee hired the law firm of Stone, Pigman, Walthers, Wittman and Hutchinson as special counsel. On October 16, 1985, the bankruptcy court approved the trustee's request to allow the depositions of H.E. Avent, Sr., James A. Fink, Jr., Deborah Fink, PFC, Inc., John C. Lindsay and Edward E. Saleeby to be taken pursuant to Bankruptcy Rule 2004. As noted earlier, Collins filed a suit in the Middle District of Louisiana entitled *Collins v. Polk.*[6] Named as defendants in the *Collins* suit were James A. Fink, Jr., Deborah Fink, H.E. Avent, Sr., Mark Avent, W.J. Kinney, Brantley Burnett, John Lindsay, Herbert

---

**4.** There are several different transcripts of this hearing. The original court reporter for the bankruptcy court apparently was unable to find or transcribe her notes. The transcript was then prepared from a tape and an enhanced version of the same tape by another court reporter.

**5.** Bankruptcy court transcript, p. 3.

**6.** 115 F.R.D. 326 (M.D.La.1987). See also Footnote 2.

Polk, Judith Polk Hendrick, and Polk Chevrolet.

On April 17, 1986, the bankruptcy judge issued the following order:

Until further order of the Court, the trustee is prohibited from further pursuit of any legal action against any parties in connection with the sale of Stinger Boat stock, formerly property of the estate, except such actions and procedures as the trustee may be required by the District Court to take and except such actions and procedures as may be necessary to preserve rights of the estate against lapse or loss on account of the running of time.

The Court will hear, beginning at 9:30 a.m. on July 7, 1986, the following parties:

(1) The trustee and general counsel for the trustee;

(2) Special counsel for the trustee;

(3) H.E. Avent, Mark S. Avent, Brantley T. Burnett, W.J. Kinney, James A. Fink, Jr., Deborah W. Fink, and John C. Lindsay, represented by Mr. John L. Avant;

(4) Judy Polk, Herbert Polk, and Polk Chevrolet, Inc.

The issues to be heard are:

(1) Whether to authorize the trustee to continue civil proceedings for damages and/or for other relief in connection with the sale of Stinger Boat Co. stock or whether to direct the trustee to seek dismissal of said action;

(2) Whether to authorize special counsel to continue to represent the trustee in connection with said civil action(s);

(3) Whether the trustee and/or special counsel have abused the process and authority of the Bankruptcy Court in such a way as to justify sanctions, and, if so, what sanctions are just. In connection with this issue, the hearing will not consider sanctions more properly imposed in the civil action(s) before the District Court, but will be confined to sanctions appropriate in the administration of a bankruptcy case.

On the same date, the bankruptcy court issued the following reasons for the above order:

The trustee brought on for hearing his motion for authority to continue the employment of special counsel in pursuit of a civil action for damages (and conceivably for other relief) in connection with the sale of Stinger Boat stock. Objections to the continued employment of special counsel included allegations that the trustee and special counsel have abused the process of the Bankruptcy Court.

After hearing counsel, the Court concludes that the allegations are sufficiently serious to warrant a full hearing concerning the propriety of the trustee's actions and concerning whether current special counsel should be allowed to continue to represent the trustee in connection with these proceedings. The hearing will include, as interested parties, the objectors (defendants in the Civil Action) represented by Mr. Avant, the trustee, and special counsel for the trustee. The findings will be binding on those parties for all purposes of the administration of the bankruptcy case, but will not extend to, or have any effect on, any other case, civil action, or proceeding.

Because the Hendrick suit was abandoned, the bankruptcy judge did not rule on the request for sanctions based on the alleged abuse of orders of the bankruptcy court. However, on June 20, 1986, the bankruptcy court entered an order which stated:

The Court has not considered and will not consider the question of whether the trustee and/or trustee's counsel acted improperly since no significance remains of that issue in this bankruptcy case, since no party wishes the Court to consider the issue in this bankruptcy case, and since the most significance and effective relief regarding the misconduct, if any there was, can most adequately be addressed in a motion for sanctions in connection with the Debtor's Civil Action 86-86-A against H.E. Avent, *et al* now pending before a District Judge of this court.

After the above orders were issued, the trustee filed a motion to "abandon and disclaim certain property from" the debtor's estate, which included Hendrick's suit which is now pending before this court. On June 18, 1986, the bankruptcy court granted the trustee's motion and this lawsuit was abandoned to Hendrick who was then substituted as a plaintiff in place of the trustee. The allegations surrounding the Rule 2004 depositions which concerned the bankruptcy court were brought before this Court in the *Collins* suit. The facts of the *Collins* case insofar as they are pertinent to the issues now before this Court were set forth in *Collins v. Polk*, 115 F.R. D. 326, 328–29 (M.D.La.1987):

> The facts that relate to this motion are rather complex and involve two related actions, one in the bankruptcy court and another pending before this Court. Prior to the time this suit was filed, the trustee of a pending action in the bankruptcy court was authorized to conduct an investigation regarding alleged fraud and the selling of an asset of the bankrupt estate. This transaction involved the sale of PFC stock. Thereafter, the trustee in the bankruptcy action sought and obtained leave of court under Rule 2004 of the Bankruptcy Code to take certain depositions in connection with the bankruptcy proceeding. The trustee, apparently without advising the bankruptcy court, enlisted the expertise of Mr. Collins, the plaintiff in this suit. Apparently Mr. Collins had been involved in many of the transactions that the trustee was investigating. Thereafter, Mr. Collins accompanied the attorney for the trustee in taking the depositions which were authorized pursuant to Rule 2004 of the Bankruptcy Code. Mr. Collins then participated in a round of depositions taken by the attorney for the trustee. Mr. Collins then filed his initial complaint based on the information he had obtained in the 2004 depositions taken for the bankruptcy court. At no time did Mr. Collins inform the defendants of his intention to use the information in the depositions to file a lawsuit. It is also clear that the notice of depositions required by Rule 27 of the Federal Rules of Civil Procedure was not sent to the defendants. Without serving the defendants with his complaint filed in this action as required by Rule 4 of the Federal Rules of Civil Procedure nor advising them of the fact that the suit had been filed, Mr. Collins then proceeded with the second round of depositions taken for the attorney of the trustee in the bankruptcy matter. At no time during these depositions did he inform the parties whose depositions were taken and who are now defendants in this suit that a lawsuit had been filed against them. It is also clear that the requirements of Rule 27 of the Federal Rules of Civil Procedure were not complied with. After conducting a second round of depositions, the trustee, acting with knowledge that he had obtained from the depositions taken pursuant to the order of the bankruptcy judge, filed a separate action against many of the same defendants who are named in this suit. That suit is entitled *Starns v. Avent* and is pending before this Court bearing docket number CA 86–86–B.
>
> After Mr. Collins had taken all of the 2004 depositions authorized by the bankruptcy court, he then amended his suit and then for the *first time* served the defendants with the original and amended complaints. The defendants argue that the procedure used by Mr. Collins in obtaining the information from the defendants in depositions without advising them of the fact that a lawsuit had been filed amounted to an "ambush" and had the effect of circumventing Rules 27 and 30 of the Federal Rules of Civil Procedure. Therefore, these defendants argue that because Mr. Collins' actions constituted an abuse of process, the suit should be dismissed or, in the alternative, the defendants argue that the depositions should be impounded.
>
> While this Court *strongly* condemns the practice used by Mr. Collins in securing the depositions of the defendants in this case, and while this Court shall *never* condone nor tacitly approve such conduct, the Court does not believe that the action of the plaintiff amounted to an

abuse of process. The plaintiff's actions may not constitute an abuse of process, but they clearly constitute a violation of Rules 27 and 30 of the Federal Rules of Civil Procedure. The record is clear that plaintiff took no action to secure the deposition of a party prior to the time a suit was filed in accordance with the provisions of Rule 27. It is also clear that the plaintiff failed to comply with the provisions of Rule 30(a) of the Federal Rules of Civil Procedure insofar as giving proper notice of the deposition and complying with the thirty day time limitation set forth in the rule. Not only did the defendants not receive any notice, they were not given the opportunity to have counsel present nor were they given the opportunity to cross-examine the parties whose depositions were taken. The record also reveals that the parties whose depositions were taken were not given notice of the purpose of the depositions by the trustee. The application for the order which set forth the reasons for the 2004 depositions was not given to any of the parties whose depositions were taken.

The plaintiff had a clear and unfair advantage over the defendants during the taking of the 2004 depositions. While the Court *reluctantly* declines to dismiss this case because of the manner in which the depositions were taken, the Court does believe that it would be in the interest of justice that the parties in this suit not be allowed to use the depositions taken pursuant to the 2004 order granted by the bankruptcy judge. Not only will the depositions be impounded, but the depositions shall not be used by any party in this case for any purpose. In addition, all summaries of the depositions and notes taken during the depositions must also be submitted to the Court. Any violation of this order shall constitute a contempt of this Court's order and appropriate sanctions shall be imposed by the Court for any violation of this order.

While the Court has clearly expressed its dissatisfaction at the manner in which the depositions were taken in this case, the Court expresses no opinion on the alleged violations of the Louisiana Code of Professional Responsibility involved in this case or other ethical violations. The Court's role is to preside in this case and ensure that all of the litigants receive a fair and impartial trial. The ethical rules and considerations raised by the manner in which the depositions were taken is better addressed to other tribunals charged with regulating the conduct of attorneys practicing law in the state of Louisiana. This Court will ensure that the parties comply with the Federal Rules of Civil Procedure and where thee has been an abuse or misuse of these procedural rules, the Court will take appropriate actions. This Court will leave to other parties and tribunals the obligation to carry out the responsibilities of their respective offices.

The Court now turns to a discussion of the legal issues involved in defendants' motion for summary judgment.

II. Was the order issued by the bankruptcy court on February 13, 1985 a final judgment?

█ After conducting an evidentiary hearing on February 13, 1985, the bankruptcy court issued an order which authorized and confirmed the sale of Hendrick's stock in Stingray. The first issue the Court must resolve is whether the February 13, 1985 order was a final judgment. Neither Hendrick nor any other party appealed the February 13, 1985 order in accordance with Bankruptcy Rule 8001. Defendants contend that this order was a final judgment which can only be attacked by an appeal or by a motion filed pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[7]

Bankruptcy Rule 9021 requires that every judgment "be set forth on a separate document." The order of February 13, 1985 which was prepared by the attorney for the trustee and signed by Judge Wesley Steen, complies with Rule 9021. The Court

---

**7.** Bankruptcy Rule 9024 makes Rule 60(b) applicable to bankruptcy proceedings.

finds that the order signed by the bankruptcy judge on February 13, 1985 is a final judgment. Thus, plaintiff's contention that the order was interlocutory in nature is without merit.

The February 13, 1985 order authorized the sale of "all of the estate's shares of stock in PFC, Inc., said sale to be free and clear of all liens, claims, and encumbrances, including any and all alleged co-owner's rights or right of first refusal of Judith Polk Hendrick." [8] Thus, the order of February 13, 1985 was an authorization to sell property of the bankrupt's estate. An order issued by the bankruptcy court authorizing the sale of part of the bankrupt estate is a final judgment [9] even though the order neither closes the bankruptcy case nor disposes of any claim. [10] Thus, in *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984) [11] the Court stated:

> There is no real doubt that the district court possessed jurisdiction to authorize and approve a trustee's sale. *See* 11 U.S.C. §§ 515, 516(3).
>
> That the district court's order authorizing the sale of The Charles House property and judgment confirming the sale and passage of title to Southmark operated as "a final judgment on the merits" is evident. 742 F.2d at 870.

Having concluded that the February 13, 1985 order constituted a final judgment, the Court must now determine whether Rule 60(a) applies under the facts of this case.

### A. *Does Rule 60(a) apply under the facts of this case?*

Plaintiff has filed a motion under Rule 60(a) of the Federal Rules of Civil Procedure to correct the February 13, 1985 order to reflect the bankruptcy judge's alleged intention to allow the plaintiff to attack the stock sale through a fraud suit. Plaintiff further argues that if the Court does correct the order to permit fraud suit, the February 13, 1985 order cannot be considered a final judgment. [12] Rule 60(a) provides the procedure which must be followed to obtain relief for clerical mistakes in a judgment:

> (a) Clerical Mistakes: Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

Thus, the issue before the Court is whether the alleged discrepancy between Judge Steen's intentions, the court's minute entry and his written order can be classified as a "clerical mistake" within the meaning of Rule 60(a). Plaintiff relies on two cases to support his contention that a

---

**8.** *See* p. 624 of this opinion.

**9.** *See, e.g., In re Sax*, 796 F.2d 994, 996 (7th Cir.1986). (" 'Final' is interpreted more liberally in bankruptcy cases than in other federal cases. *In Re Barker*, 768 F.2d 191, 193 (7th Cir.1985) ... Orders approving or failing to approve a sale of debtor's property are considered final decisions and are immediately appealable.")

**10.** 28 U.S.C. § 158(d); *Met-L-Wood Corp. v. Pipin*, 861 F.2d 1012, 1016 (7th Cir. Nov. 8, 1988) (An order which authorized the sale of the debtor's property "is appealable as a final order under 28 U.S.C. § 158(d)"); *See also In re Sax*, 796 F.2d 994 (7th Cir.1986); *In re Delta Services Industries*, 782 F.2d 1267 (5th Cir.1986); *South-*

*mark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984); I. Collier on Bankruptcy § 3.03 at 3–156 (5th ed. 1986).

**11.** *See also, Childress v. Aurora Nat'l Bank (In re Childress)*, 851 F.2d 926 (7th Cir.1988); *Bayer v. Nicola (In re Bestmann)* 720 F.2d 484 (8th Cir. 1983); *Sulmeyer v. Karbach Enterprises (In re Exennium, Inc.)*, 715 F.2d 1401 (9th Cir.1983); *Gross v. Russo (In re Russo)*, 762 F.2d 239 (2d Cir.1985).

**12.** Bankruptcy Rule 9024 adopts Rule 60 of the Federal Rules of Civil Procedure. It must be noted that no request was filed with the bankruptcy court under Bankruptcy Rule 9024 or Rule 60 of the Federal Rules of Civil Procedure to correct the judgment.

clerical mistake was involved in this case.[13] However, the Fifth Circuit Court of Appeals has taken a more narrow view of what constitutes a clerical mistake. In *Harcon Barge Co. v. D & G Boat Rentals,* 784 F.2d 665, 668–69 (5th Cir.) (en banc) *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986) the court stated: [14]

> The scope of Rule 60(a) is, as we have noted, very limited. In *Dura–Wood Treating Co., Division of Roy O. Martin Lumber Co. v. Century Forest Industries, Inc.* [694 F.2d 112, 114 (5th Cir. 1982)], the court set out these limits:
>
> > Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another. Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature.... If of this sort, it matters not whether the magistrate committed it—as by mistakenly drafting his own judgment—or whether his clerk did so ... the law does not regard such trifles. In such instances the judgment can be corrected to speak the truth. (Citations omitted).

Thus, it is proper to use Rule 60(a) to correct a damages award that is incorrect because it is based on an erroneous mathematical computation, whether the error is made by the jury or by the court. *"Errors of a more substantial nature are to be corrected by a motion under Rule 59(e) or 60(b)."* Correction of an error of "substantive judgment," therefore, is outside the reach of Rule 60(a). (Emphasis supplied)

Furthermore, in *Warner v. City of Bay St. Louis,* 526 F.2d 1211, 1212 (5th Cir. 1976), the Fifth Circuit refused to treat the amount of interest to be paid on a judgment as a clerical error. The Court stated that "errors that effect substantial rights of the parties are outside the scope of Rule 60(a)." *Id.* at 1212.

The error sought to be corrected by the plaintiff in this case is more than a clerical error. The correction requested by the plaintiff is too substantial in nature to fall within the provision of Rule 60(a). Furthermore, a review of the transcript of the February 13, 1985 hearing fails to make it absolutely clear that the judgment should be corrected in the manner sought by the plaintiff. The transcript does reflect the intent of all parties to sell the Stingray stock which belonged to Hendrick. The record also reflects the suspicion a number of parties had regarding the stock sale, including the attorneys for the trustee and the debtor. However, it is not certain from the record what type of action, if any, was being reserved to the trustee.[15] It would certainly be very difficult for this Court to determine what specific rights, if any, were reserved from a review of the transcript in this case. The Court would also be required to interpret the meaning of the phrase "free and clear of liens, claims and encumbrances" which was included in the bankruptcy judge's order of February 13, 1985.

None of the parties moved to have the bankruptcy court correct the judgment under Rule 59(e)[16] within ten days after the judgment was entered. Furthermore, no one moved to stay the order authorizing the sale of the stock pending any appeal or other review by the bankruptcy court or

**13.** *Blanton v. Anzalone,* 813 F.2d 1574 (9th Cir. 1987), and *Allied Materials Corp. v. Superior Prods. Co.,* 620 F.2d 224 (10th Cir.1980).

**14.** *See also, Jones v. Anderson–Tully Co.,* 722 F.2d 211, 212 (5th Cir.1984); *Trahan v. First National Bank,* 720 F.2d 832, 833–34 (5th Cir. 1983), judgment of district court aff'd, 747 F.2d 990 (5th Cir.1984) (per curiam). *See also, In re Galiardi,* 745 F.2d 335, 337 (5th Cir.1984); *Warner v. City of Bay St. Louis,* 526 F.2d 1211, 1212 (5th Cir.1976), judgment of district court aff'd,

552 F.2d 583 (5th Cir.1977) (per curiam); *West Virginia Oil & Gas Co. v. George E. Breece Lumber Co.,* 213 F.2d 702, 705 (5th Cir.1954).

**15.** *See, e.g.,* transcript of hearing of February 13, 1985, pp. 7, 8, 9, 42, 43.

**16.** Rule 59(e) provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

**630**

the district court. In fact, no one appealed the order of the bankruptcy court.

If this Court were to accept the broad interpretation of "clerical mistakes" advanced by the plaintiff, the Court's decision would not only be in conflict with the Fifth Circuit's interpretation of Rule 60(a), but would also be required to ignore an established line of jurisprudence which holds that a court's written words, and not evidence of its intentions, control the meaning of its judgment. In *Murdaugh Volkswagen, Inc. v. First National Bank*, 741 F.2d 41, 44 (4th Cir.1984) the court stated:

> Courts must speak by orders and judgments, not by opinions, whether written or oral, or by chance observations or expressed intentions made by courts during, before or after trial, or during argument. When the terms of a judgment conflict with either a written or oral opinion or observation, the judgment must govern.

*See also Richmond, Fredericksburg and Potomac R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 795 F.2d 1161 (4th Cir.1986) (Widener, J., dissenting) ("If the order of the court is contrary to an observation made by the judge in the transcript, . . . it is the order which controls."); *Duffer v. American Home Assurance Co.*, 512 F.2d 793, 799 (5th Cir.1975) ("We hold that the trial court's oral expression of future intention . . . was not a judgment. . . ."); *Segars v. Atlantic Coast Line R.R. Co.*, 286 F.2d 767, 770 (4th Cir.1961) ("It is the formal order that determines the action of the court rather than some chance statement or observation made by the Judge during the course of oral arguments.").

Therefore, the Court finds that the order signed by the bankruptcy court on February 13, 1985 which authorized the sale of plaintiff's stock in Stingray was a final judgment. The Court further finds that plaintiff's motion to correct the judgment under Rule 60(a) of the Federal Rules of Civil Procedure is without merit and is denied.

**III. Is a Rule 60(b) motion the sole method of attacking the February 13, 1985 order of the bankruptcy court?**

The plaintiff filed this suit on February 12, 1986. The original complaint asserted claims under RICO, the 1934 Securities Act, § 10b–5 and various state laws. On November 6, 1987, approximately thirty-three months after the bankruptcy court issued its order approving the sale of Hendrick's Stingray stock, the plaintiff amended his complaint to seek rescission of the stock sale. A review of the pleadings and pretrial order filed in this case reveals that plaintiff has never filed a motion under Rule 60(b) with either the bankruptcy court or this Court.

Defendants contend the plaintiff's sole remedy to collaterally attack the February 13, 1985 order is under Rule 60(b) of the Federal Rules of Civil Procedure. Since plaintiff failed to timely file a Rule 60(b) motion, defendants argue that plaintiff's suit should be dismissed.

In response to defendants' motion for summary judgment, plaintiff argues that he may file a separate suit under federal and state laws to recover damages for the alleged fraud committed by the defendants in connection with the stock sale. Plaintiff further contends that his second amended complaint which seeks a rescission of the sale should be treated as a Rule 60(b) motion which relates back to the time his original complaint was filed. Finally, plaintiff contends that because the defendants' conduct constitutes fraud on the court, the time for filing a motion under Rule 60(b) has not run.

Plaintiff's contentions are without merit. The Court finds: (1) plaintiff's sole remedy to contest the February 13, 1985 order of the bankruptcy court under the facts of this case is under Rule 60(b) motion; (2) plaintiff has not filed a Rule 60(b) motion; (3) the second amended complaint cannot be treated as a Rule 60(b) motion; [17] (4) even

17. It must be noted that not all the parties to the bankruptcy action who would have a right to respond to a Rule 60(b)(3) motion are parties to this suit, including the creditors who received

if the second amended complaint is treated as a Rule 60(b)(3) motion, the one year period to file such a motion has expired and cannot be extended by the court; and, (5) even if the second amended complaint is treated as a Rule 60(b) motion to reopen the judgment for fraud on the court, the motion is without merit because there was no fraud committed on the bankruptcy court.

Rule 60(b) authorizes a court to grant relief from a final judgment, order or proceeding to a party upon a proper showing and just terms. The rule provides in pertinent part:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.: On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or to set aside a judgment for fraud upon the court.

Plaintiff could and should have attacked the final judgment of the bankruptcy court by way of a timely filed motion under Bankruptcy Rule 9024 or under Rule 60(b) in this Court. The issue confronting this Court is whether any other remedies are available to the plaintiff to challenge the validity of the final judgment of the bankruptcy court.

The precise issues involved before this Court were recently considered by the Seventh Circuit Court of Appeals in *Met–L–Wood Corp. v. Pipin.* In *Met–L–Wood,* the plaintiff filed for bankruptcy on December 6, 1984. Four days later, the bankruptcy judge ordered the sale of Met–L–Wood's bulk assets. Six months after the bankruptcy court approved the sale, Met–L–Wood's Chapter 11 case was converted to a Chapter 7 liquidation. Thereafter, the trustee appointed by the court investigated the circumstances surrounding the judicial sale. The newly appointed trustee "armed with what he believed to be compelling evidence of fraudulent character of the judicial sale" filed two actions: (1) on April 25, 1986, the trustee filed a suit charging fraud under RICO, other statutes and state law; and, (2) in July of 1986, the trustee filed a Rule 60(b)(3) motion with the bankruptcy court to reopen the bankruptcy proceedings because of the alleged fraud in connection with the sale.

The parties and facts involved in the *Met–L–Wood* case were similar to the parties and facts involved in the case now before the Court.[18] The plaintiff in *Met–L–*

---

the money and the trustee. Furthermore, the second amended complaint only seeks a rescission of the stock sale, but is silent on reinstating the cause of action which was filed against and by Hendrick in South Carolina and was dismissed by the February 13, 1985 order.

**18.** The Seventh Circuit Court of Appeals summarized the pertinent facts in *Met–L–Wood* as follows:

> Judge McCormick appointed an interim trustee pending the creditors' election of a permanent one. They elected Gekas on August 6. Gekas investigated the circumstances surrounding the judicial sale and eventually decided that there had been skullduggery of two kinds. First, Judge McCormick, who in an unrelated case had been reprimanded for an ex parte contact with a firm appearing before

him (see *In re Wisconsin Steel Corp.,* 48 B.R. 753 (N.D.Ill.1985); See also *In re X–Cel, Inc.,* 61 B.R. 691 (N.D.Ill.1986), had Gekas believed, agreed to the December 10 hearing on the ex parte urging of a law firm representing Met–L–Wood (the Coffield firm—oddly, not the firm that had represented Met–L–Wood in the bankruptcy proceeding). Gekas's second charge was that the bidding had been rigged, in a scheme orchestrated by the Coffield firm to bail out Pipin and the secured creditors and leave the unsecured creditors out in the cold: Smith was a shill for Pipin, and his bid was phony because Pipin didn't have $800,000 with which to make good on it if it was accepted. How this might have helped Pipin and the secured creditors is unclear, but maybe the idea is that Smith's bid deterred others from bidding. Thompson, Gekas

*Wood* was the former debtor in the bankruptcy proceeding whose property was sold. The defendants were lawyers who had represented an undisclosed buyer, a party who acted as a "shill" for the undisclosed buyer, and the undisclosed buyer. The complaint alleged improper conduct on the part of the bankruptcy judge and fraud on the court because of the improper conduct of the bankruptcy judge and the lawyers who were sued in the RICO action. The court in *Met–L–Wood* dismissed the Rule 60(b)(3) motion on the grounds that it was not timely filed within the one-year period set forth in the rule. A second judge dismissed the fraud suit on the basis of collateral estoppel, based on the order of the bankruptcy court confirming the sale. The Seventh Circuit affirmed both decisions.

In dismissing the RICO action, the Seventh Circuit stated that no appeal was taken from the order authorizing the sale of the debtor's property. Thus, res judicata applied to bar the parties to the bankruptcy proceeding from collaterally attacking the final judgment of the bankruptcy court which authorized the sale of the debtor's property. The court stated:

> No appeal from Judge McCormick's order was taken however; and after the time for appeal had lapsed, the order could not be attacked in a new lawsuit brought by a party to the sale proceeding or by a successor to that party or by anyone else so far identified with such a party as to be classified as being in privity with him; such a suit would be barred by res judicata. The only other remedy would be a motion to vacate the judgment under Rule 60(b).... The unsecured creditors who appeared at the two hearings before Judge McCormick and urged him first to allow bids for Met–L–Wood's assets to be solicited and then to approve Thompson's bid were parties to the sale proceeding. They are therefore

charged, was also in cahoots with Pipin—he was planning to sell him back the Sea–Lok operation, the only profitable part of Met–L–Wood's business. The unsecured creditors had insufficient notice and so weren't able to make their own bid or arrange for independent bidders. (We emphasize that all this is

barred by res judicata from bringing a lawsuit to nullify the sale. (Bringing the suit under RICO could make no difference. RICO is many things, but it is not an exception to res judicata. *Harris Trust & Savings Bank v. Ellis*, 810 F.2d 700, 705–06 (7th Cir.1987).)

\*　　\*　　\*　　\*　　\*　　\*

A sale under section 363(b) that fails to comply with the notice or hearing requirements of the statute and the applicable bankruptcy rules is invalid and may be set aside on appeal. But it is not void. This is shown by the fact that even a reversal on appeal of the order authorizing or confirming the sale will not affect the sale's validity if the buyer was acting in good faith and the sale had not been stayed pending appeal. 11 U.S.C. § 363(m). That provision is not applicable here, because the purchaser (Thompson) and everyone else involved in the sale (except the representative of the unsecured creditors!) is charged with fraud. But it expresses a highly relevant concern with the importance of finality in judicial sales in bankruptcy. *See also In re Sax, supra,* 796 F.2d at 998. Gekas's suit does not seek to rescind the sale. But by seeking heavy damages from the seller, the purchaser, the purchaser's purchaser (Pipin), a law firm involved in the transaction, and the secured creditors that benefited from the sale, the suit is a thinly disguised collateral attack on the judgment confirming the sale. This may be done only by the route provided for collateral attacks on judgments. After the time for appeal had run, the validity of the sale was established, even against nonparties to the sale proceeding.

\*　　\*　　\*　　\*　　\*　　\*

Now that there is a Rule 60(b), expressly applicable to bankruptcy as we have

Gekas's version of the events; it is not established truth.) After the sale, Thompson did sell Pipin the Sea–Lok operation, for $120,000, and he in turn granted a security interest in the operation to Met–L–Wood's two principal secured creditors. *Met–L–Wood,* 861 F.2d at 1015–16.

seen, the inherent power seems otiose; and although the cases continue to refer to it, they define it in terms of Rule 60(b). *See*, e.g., *In re Chung King, Inc.*, 753 F.2d 547, 549–50 (7th Cir.1985). As a natural development from those cases, as well from the text of Bankruptcy Rule 9024, which applies Rule 60(b) to bankruptcy proceedings, we hold that confirmed sales—which are final judicial orders—can be set aside only under Rule 60(b). 861 F.2d at 1016–18.

The Seventh Circuit issued a similar ruling in *Metlyn Realty Corp. v. Esmark*, 763 F.2d 826 (7th Cir.1985). In *Metlyn*, securities were sold pursuant to a court order. Thereafter, a Rule 60(b) motion was filed to reopen the judgment on the ground that the defendant had withheld certain information from the court at the time the sale was approved. The court held that Rule 60(b) of the Federal Rules of Civil Procedure and not the securities laws was the sole means of attacking the judgment.[19]

The arguments based on the securities laws do no better. The securities laws doubtless require truthful statements and penalize fraud, as the objectors emphasize, but this does not imply that they authorize the reopening of judgments or override the standards of Rule 60(b). The securities laws were designed to handle transactions in markets, in which the parties might have too little incentive to reveal information and might find it too easy to tell lies or half-truths. They do not apply expressly to misstatements in the course of litigation, and they were not designed to regulate the conduct of trials.

\* \* \* \* \* \*

The existence of a private right of action depends on the meaning of the legislation, and it is quite farfetched to suppose that Congress meant to change the rules of civil litigation when it enacted the Securities Act of 1933 and authorized the SEC to promulgate Rule 10b–5 under the '34 Act.

\* \* \* \* \* \*

The principles developed in the application of Rule 60(b) are tuned to the benefits and burdens of reopening judgments. *We conclude that these principles are the sole means of attack on final civil judgments.* The fact that there are rules for securities cases on the merits— and, we suppose, particular rules for just about every substantive category of litigation in federal courts—is irrelevant. The legal system has devised ways of channeling attacks on final judgments back through a single device specially designed for the purpose of reopening. The principles of claim and issue preclusion cut off one kind of attack; the rule that witnesses are absolutely immune from civil liability for their testimony, *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), cuts off another; we conclude that Congress did not mean to inject the securities laws into a branch of judicial administration from which other competing principles have been carefully removed.

There are strong policy reasons for concluding that Rule 60(b) is the sole means of attack on final civil judgments—finality of civil judgments.[20] Final judgments in civil cases and bankruptcy cases fix the rights of the parties.[21] Thus, final judgments should only be reopened for the extraordi-

---

**19.** *Id.* at 833–34 (emphasis added). *See also, Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984); *Harris Trust and Savings Bank v. Ellis*, 810 F.2d 700 (7th Cir. 1987).

**20.** In *Metlyn*, 763 F.2d at 830, the court noted:
There are good reasons for the stringent limits on reopening a final judgment. The rule that the final judgment governs the future induces the parties to focus all of their efforts in a single proceeding. If they know that the judgment will establish their rights

once and for all, they will bring to bear the information and energies necessary to produce an informed decision. If they believe that they can have a second try, they are more likely to skimp the first time around, and as a result the judicial process will become less accurate.

**21.** *Abraham v. Aguilar (In re Aguilar)*, 861 F.2d 873–874 (5th Cir.1988) (wherein the court recognized "the important interest in the finality of judgments in a bankruptcy case).

nary reasons set forth in Rule 60(b).[22]  This is particularly so in in rem proceedings under § 363 of the Bankruptcy Code.  A sale under § 363 transfers property rights which are good against the world.  Both parties and non-parties to the bankruptcy proceeding are directly affected by such a sale.  In some instances the court is required to act swiftly and decisively.  This point was made amply clear in *Met–L–Wood*, 861 F.2d at 1017, 1019:

> We are not just invoking legal theories sanctified by Latin tags.  The determining considerations are pragmatic.  Often, once a petition for bankruptcy is filed, keeping the bankrupt in operation is difficulty.  Suppliers and customers, fearing interruption of service, may shy away and creditors be reluctant to advance fresh credit, even though such credit carries a high priority in bankruptcy.  The bankrupt may be shunned like a leper.  Because of these possible consequences of bankruptcy, it may make sense—not least from the creditors' standpoint—to shift the bankrupt's assets to another owner as quickly as possible, so that the business can continue in other hands than the bankrupt's, free of the stigma and uncertainty of bankruptcy.  That is what the creditors told Judge McCormick should be done with the assets of Met–L–Wood.  They thought that those assets and therefore their claims against them would be more valuable if the assets were sold, and sold pronto.  He agreed.
>
> \*       \*       \*       \*       \*       \*
>
> The result may seem a harsh one; it may seem to illustrate the penchant of courts (as some would see it) to work injustice through technicalities.  But insistence on tight deadlines is not always the sign of a Prussian soul.  Unless bankruptcy

sales are final when made, rather than subject to being ripped open years later, high prices will not be offered for the assets of bankrupt firms—and the principal losers (pun intended) will be unsecured creditors.

■  Thus, the Court finds that the sole method to attack the stock sale ordered by the bankruptcy court on February 13, 1985 under the facts of this case is a motion under Rule 60(b) of the Federal Rules of Civil Procedure.  The finality of the February 13, 1985 order precludes any other action brought by the plaintiff.

### IV.  A.  Did the plaintiff file a Rule 60(b) motion?

The Court must now determine whether plaintiff filed a 60(b) motion.  Plaintiff has not filed a formal motion under Rule 60(b) in either the bankruptcy court or this Court.  In fact, the plaintiff has never even mentioned Rule 60(b) in the original or three amended complaints, in the pretrial order, or in any amendment to the pretrial order.  The only mention of Rule 60(b) up to the time the final pretrial order was filed was made by the defendants who sought to have the suit dismissed because of plaintiff's failure to file a Rule 60(b) motion.

On November 6, 1987, plaintiff filed his second amended complaint which sought a rescission of the stock sale of February 13, 1985.  Plaintiff now seeks to have the Court treat this second amended complaint as a Rule 60(b) motion.

■  The Court recognizes the general rule that pleadings in federal court, including prayers for relief, should be liberally construed.[23]  However, the question the Court must determine is what relief was plaintiff actually seeking when he filed his second amended complaint.  The Court assumed after receiving the motion to amend

---

**22.** This Court has previously decided a case in which the plaintiffs filed a separate independent suit to set aside the desegregation order issued in the East Baton Rouge Parish School case.  In *Baier v. Parker*, 523 F.Supp. 288, 290 (M.D.La. 1981) this Court stated:

> Whatever the plaintiffs have styled their action, plaintiffs' suit is nothing more than a horizontal appeal taken to a district court of

another district court's decision and of a decision rendered by an appellate court.  Such attempts to deliberately bypass the proper channels for appellate review shall not be tolerated or condoned by this Court.

**23.** While pleadings should be liberally construed, plaintiff asks this Court to treat his pleading as a motion.

and the proposed amended complaint that plaintiff was seeking a rescission of a sale under state law.[24] If the plaintiff intended to treat his second amended complaint as a Rule 60(b) motion, rather than as a claim for rescission under state law, this Court would not have permitted the second amended complaint to be filed for a number of reasons.[25] The Rule 60(b) motion should have been filed in the bankruptcy court, albeit this Court could have withdrawn the motion. Not all of the parties to the bankruptcy proceeding are parties before this Court. Indeed, neither the creditors to whom proceeds from the stock sale were paid and nor all of the parties in Collins' South Carolina suit are before this Court. It is also important to note that the trustee is no longer a party to this action and has abandoned this suit and any recovery therein from Hendrick's bankrupt estate. Had a Rule 60(b) motion been timely and properly filed with the bankruptcy court, the trustee and creditors would have stood to reap any financial benefits which would have resulted from a recovery in a RICO, 10b–5 or other fraud related suit. The parties' interest in the South Carolina suit could have also been protected if the Rule 60(b) motion had been timely filed. However, if the Court now treats plaintiff's second amended complaint as a Rule 60(b) motion, only Hendrick would stand to gain from his tardy and unexcused failure to follow the Federal Rules of Civil Procedure.

Furthermore, this Court should not be required to assume or guess what motion or other relief a party is seeking. A party should properly identify his pleadings, motions, and the relief sought.[26] The United States Supreme Court has emphasized this fact in *Johnson v. New York, N.H. & H.R. Co.*, 344 U.S. 48, 50–51, 73 S.Ct. 125, 127, 97 L.Ed. 77 (1952). The respondent in the *Johnson* case sought to have its motion to set aside the verdict treated as a motion for judgment in its favor or a motion for a new trial. The Supreme Court refused to do so, stating:

> Although this respondent made several motions it did not as the rule requires move within ten days after verdict "to have judgment entered in accordance with his [its] motion for a directed verdict". We are told, however, in respondent's brief that its motion to set aside the verdict "was intended to be a motion for judgment in its favor or for a new trial" and that "[o]bviously respondent did not merely want the verdict to be set aside but wanted the relief that invariably follows such a setting aside on the grounds urged: a judgment in its favor or a new trial." The defect in this argument is that respondent's motions cannot be measured by its unexpressed intention or wants. Neither the trial judge nor the Court of Appeals appears to have treated the motion to set aside the verdict as asking for anything but that. And surely petitioner is not to have her opportunity to remedy any shortcomings in her case jeopardized by a failure to fathom the unspoken hopes of respondent's counsel. Respondent's motion should be treated as nothing but what it actually was, one to set aside the verdict—not one to enter judgment notwithstanding the verdict.

> (b) Motions and other papers.
> (1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall set forth with particularity the grounds therefor, and shall set forth the relief sought ...
> (2) The rules applicable to captions and other matters of form of pleadings apply to all motions ...
> *See also* Rule 10 which provides that "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a)."

**24.** The Court was aware that other pendent state law claims had already been asserted by the plaintiff in his original complaint.

**25.** The Court has discretion to grant or deny a motion to amend a complaint under Rule 15(a) of the Federal Rules of Civil Procedure. As will be noted later in this opinion, an amended complaint is not a proper vehicle to bring a Rule 60(b) motion, and, even if it was, the request was not timely filed under Rule 60(b).

**26.** *See, e.g.,* Rule 7(b) of the Federal Rules of Civil Procedure which provides in pertinent part:

A similar result was reached by the Seventh Circuit in *Hulson v. Atchison, T. & S.F. Ry. Co.*, 289 F.2d 726, 729 (7th Cir.), *cert. denied*, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961) wherein the Court stated:

> The 10 day limit for filing a motion for new trial fixed in Rule 59(b) cannot be enlarged under Rule 6(b), except as provided in subsection (c) of Rule 59, and such exception has no application to the situation before us here.

\* \* \* \* \* \*

In order to avoid the application of the foregoing rules, plaintiffs urge this court to treat the motion for extension "to amend their motion for a new trial," served on June 16, 1960, as a motion for a new trial. The trial court did not err in rejecting this contention. Plaintiffs' motion "cannot be measured by its unexpressed intention or wants." It "should be treated as nothing but what it actually was," one to amend a motion for a new trial which was not on file and was never timely filed. *Johnson v. New York, N.H. & H.R. Co.* [1952] supra, 344 U.S. [48] at page 51, 73 S.Ct. [125] at page 127 [97 L.Ed. 77]; *John E. Smith's Sons Co. v. Lattimer Foundry & Mach. Co.*, D.C.M.D.Pa.1956, 19 F.R.D. 379, 381, and cases cited therein, affirmed 3 Cir., 1956, 239 F.2d 815.

Thus, the Court concludes plaintiff has not filed a Rule 60(b) motion. The Court further finds that if the plaintiff seeks to have his second amended complaint treated as a Rule 60(b) motion, the Court hereby vacates and sets aside its prior order allowing the amendment. The Court, in granting the amendment, intended to grant plaintiff leave to file an amended complaint, not a Rule 60(b) motion.

B. *Assuming arguendo the second amended complaint is a Rule 60(b) motion, can the amendment relate back to the original complaint?*

■ Even assuming plaintiff's second amended complaint could be considered a Rule 60(b) motion, the Court must determine if the amendment can relate back to the original complaint. If the amendment can relate back, the alleged Rule 60(b) motion would have been filed within a year.[27] Plaintiff contends that the motion relates back under Rule 15(c) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Rule 15(c) allows relation back of claims and defenses asserted in pleadings but does not allow relation back where motions are filed. Rule 7 carefully distinguishes pleadings from motions.[28] The Fifth Circuit and other courts have specifically ruled that a motion is not a pleading for purposes of Rule 15(a).[29] Since a motion cannot be

---

27. Of course, the Court would still have to determine if the motion was timely filed under Rule 60(b). This issue will be considered, *infra*.

28. **Rule 7. Pleadings Allowed; Form of Motions**

   (a) **Pleadings.** There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains such a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

   (b) **Motions and Other Papers.**

   (1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

   (2) The rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules.

   (3) All motions shall be signed in accordance with Rule 11.

29. *McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870, 872 n. 2 (5th Cir.1976), modified on reh'g on other grounds, 545 F.2d 919 (5th Cir.1977). *See also McDonald v. Hall*, 579 F.2d 120 (1st Cir.1978); *Fuhrer v. Fuhrer*, 292 F.2d 140 (7th Cir.1961); *United States v. 64.88 Acres of Land*, 25 F.R.D. 88 (W.D.Pa.1960); Wright &

considered as a pleading, a Rule 15(a) amendment cannot be used for bringing a motion and Rule 15(c) cannot be used to relate the motion back to the date of filing the original pleading.[30]

C. *What effect does Rule 6(b) of the Federal Rules of Civil Procedure have on the time in which a rule 60(b) motion may be filed?*

Rule 6(b) of the Federal Rules of Civil Procedure presents a serious impediment to plaintiff's request that the Court allow his second amended complaint to be treated as a Rule 60(b) motion which relates back to his original complaint. Rule 6(b) provides that a court "may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), *60(b)*, and 74(a), except to the extent and under the conditions stated in them." (emphasis added). Rule 60(b) has no provision for relation back and contains a specific prohibition against extending the time for filing certain motions, including a Rule 60(b) motion. The Fifth Circuit in *Stacy v. Williams*, 446 F.2d 1366 (5th Cir.1971) was confronted with a similar issue. In *Stacy*, a judgment was entered on December 1, 1969 which required the defendants to pay costs of the

suit. On December 9, 1969, the plaintiffs filed a bill of costs which made no reference to attorney's fees. Two months later, plaintiffs filed a motion for leave to amend the bill of costs and for allowance of attorney's fees. The district court refused to consider the amended motion because it was filed more than ten days after the judgment. The Fifth Circuit affirmed the decision of the district court and refused to allow the amended motion to relate back to the timely filed motion.

A similar result was reached in *Brest v. Philadelphia Transportation Co.*, 24 F.R. D. 47 (E.D.Pa.1959). In *Brest*, a judgment was entered on October 24, 1958. Plaintiffs filed a motion for a new trial on October 29, 1958, reserving the right to set forth additional reasons in the future. Plaintiffs filed additional reasons on November 26 and again on December 31, after the 10 day period allowed under 59(b) had passed. The district court refused to consider the additional reasons, citing the 6(b) prohibition against enlargement of time for such a motion.

Thus, it is clear that the courts consider the time periods set forth in Rules 50(b) and (c)(2),[31] 52(b),[32] 59(b), (d) and (e),[33] 60(b) [34] and 74(a) to be mandatory and juris-

---

Miller, Federal Practice and Procedure: Civil § 1475.

**30.** For a contrary view, see *Hale v. Ralston Purina Co.*, 432 F.2d 156, 159 (8th Cir.1970), which implied that a Rule 60(b) motion could relate back under Rule 15(c). The court in *Hale* did not, however, allow relation back under the facts of that case.

**31.** *Nugent v. Yellow Cab Co.*, 295 F.2d 794 (7th Cir.1961) *cert. denied*, 369 U.S. 828, 82 S.Ct. 844, 7 L.Ed.2d 793 (1962); *Hulson v. Atchinson, T. & S.F. Ry. Co.*, 289 F.2d 726 (7th Cir.) *cert. denied*, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961); *Mickey v. Tremco Mfg. Co.*, 226 F.2d 956 (7th Cir.1955); *Bass v. Spitz*, 522 F.Supp. 1343 (E.D. Mich.1981); *McCarthy v. Cahill*, 249 F.Supp. 194 (D.D.C.1966).

**32.** *Marane, Inc. v. McDonald's Corp.*, 755 F.2d 106 (7th Cir.1985); *Gribble v. Harris*, 625 F.2d 1173, 1174 (5th Cir.1980); *Flint v. Howard*, 464 F.2d 1084 (1st Cir.1972); *Steward v. Atlantic Ref. Co.*, 235 F.2d 570 (3d Cir.1956); *Torockio v. Chamberlain Mfg. Co.*, 56 F.R.D. 82, 85 n. 6 (W.D.Pa.1972), *aff'd without opinion*, 474 F.2d 1340 (3d Cir.1973).

**33.** *Leishman v. Associated Wholesale Elec. Co.*, 318 U.S. 203, 63 S.Ct. 543; 87 L.Ed. 714 (1943); *Myers v. Ace Hardware, Inc.*, 777 F.2d 1099 (6th Cir.1985); *Marane, Inc. v. McDonald's Corp.*, 755 F.2d 106 (7th Cir.1985); *Fairway Center Corp. v. U.I.P. Corp.*, 491 F.2d 1092 (8th Cir.1974); *Flint v. Howard*, 464 F.2d 1084 (1st Cir.1972); *Perry v. Richardson*, 440 F.2d 677 (6th Cir.1971); *Wagoner v. Fairview Consol. School Dist. No. 5*, 289 F.2d 480 (10th Cir.), *cert. denied*, 368 U.S. 921, 82 S.Ct. 241, 7 L.Ed.2d 135 (1961); *Steward v. Atlantic Ref. Co.*, 235 F.2d 570 (3d Cir.1956); *Tarlton v. Exxon*, 688 F.2d 973 (5th Cir.1982); *Flores v. Procunier*, 745 F.2d 338 (5th Cir.1984), *cert. denied*, 470 U.S. 1086, 105 S.Ct. 1851, 85 L.Ed.2d 148 (1985); *In re Colley*, 814 F.2d 1008 (5th Cir.) reh'g denied, 818 F.2d 443 (5th Cir. 1987), *cert. denied*, — U.S. —, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987).

**34.** *Nyyssonen v. Bendix Corp.*, 356 F.2d 193 (1st Cir.), *cert. denied*, 385 U.S. 846, 87 S.Ct. 43, 17 L.Ed.2d 77 (1966); *Terhune v. American Export Lines, Inc.*, 24 F.R.D. 70 (S.D.N.Y.1958), aff'd 271 F.2d 127 (2d Cir.1959); *Certain–Teed Prods. Corp. v. Topping*, 12 F.R.D. 406 (S.D.N.Y.1952); *Harcon Barge Co. v. D & G Boat Rentals*, 784 F.2d 665 (5th Cir.1986) (en banc); *Egger v. Phil-*

dictional and do not permit the time periods set forth therein to be extended.[35]

The Court's conclusion in this case may seem harsh. But plaintiff chose not to appeal the order of the bankruptcy court to the district court. Plaintiff also chose not to timely file any post trial motion permitted under the Federal Rules of Civil Procedure, including Rules 52(b), 59(b), (d), (e) or Rule 60(b). Plaintiff chose instead to file the current suit. Because of hindsight, he now seeks to change the free, calculated and deliberate choices he has made. In *Ackermann v. U.S.*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the Supreme Court considered and rejected a similar request:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the Keilbar case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

D. *Assuming arguendo plaintiff filed a Rule 60(b) motion, was the motion timely filed?*

Plaintiff contends that relief should be granted under Rule 60(b) in the following manner:

(a) Through an independent action to relieve plaintiff from a judgment.

(b) Because fraud was committed on the bankruptcy court.

(c) Because of the defendants' alleged fraud within the meaning of Rule 60(b)(3).

The Court will discuss each of these contentions separately.

1. Can an independent action be filed?

■ Rule 60(b) provides in part that this "rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or pleading".

The Eighth Circuit in *National Surety Co. v. State Bank*, 120 F. 593, 599 (8th Cir.1903) outlined the elements of an independent action under Rule 60(b):

> (1) a judgment which ought not in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of defendant; and (5) the absence of any adequate remedy at law.

However, the parties may not use an independent action to relitigate issues between the parties.[36] In *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 79 (5th Cir. 1970), *cert. denied* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). *Bankers Mortgage*, 423 F.2d at 79, the Fifth Circuit noted:

> The independent action can not be made a vehicle for the relitigation of issues. Courts have consistently held that a party is precluded by res judicata from relitigation in the independent equitable action issues that were open to litigation in the former action where he had a fair opportunity to make his claim or defense in that action.

An independent action is also subject to the defense of laches. Because plaintiff had a remedy under Rule 60(b)(3) and was not free of fault or negligence, the Court finds the plaintiff does not have the right to

---

*lips,* 710 F.2d 292, 329 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

**35.** *See* Wright & Miller, *Federal Practice & Procedure:* Civil 2d § 1167.

**36.** Furthermore, if the independent action is brought in a court other than the one that issued the original judgment, independent grounds of jurisdiction are required. *See* Wright & Miller, Federal Practice and Procedure: Civil § 2868.

bring an independent action.[37]

### 2. Was there fraud on the court?

■ There is no time limitation to file a motion to vacate a judgment based on fraud on the court. However, a motion alleging simple fraud under Rule 60(b)(3) must be filed within one year. Thus, the issue to be determined by the Court is whether the defendants' actions constituted fraud on the bankruptcy court or simple fraud within the scope of Rule 60(b)(3). Under facts far more serious than those alleged in this case, the Seventh Circuit in *Met–L–Wood Corp. v. Pipin,* refused to find fraud on the court despite the alleged improper conduct on the part of the bankruptcy judge and attorneys. The court in *Met–L–Wood* stated:

> If a judgment is procured by fraud, it can be set aside under Rule 60(b)(3). But that route is barred to Gekas by the one-year limitation that Rule 60(b) places on motions under subsection (3). Gekas appeals to the catch-all provision, subsection (6) ("any other reason justifying relief from the operation of the judgment"), which has no time limit. We have italicized the word in subsection (6) that defeats Gekas's claim. You cannot use the catch-all provision to get around the express one-year limitation on motions based on fraud in procuring a judgment. Otherwise the limitation would be nugatory.
>
> Rule 60(b) has, however, an express exception for "fraud upon the court." It has been, for the most part, interpreted narrowly. *See,* e.g., *In re Whitney–Forbes, Inc.,* 770 F.2d 692, 698 (7th Cir. 1985). Otherwise it would duplicate Rule 60(b)(3)—which is itself nationally construed, *see,* e.g., *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 832–33 (7th Cir.1985). Therefore the courts have held that, other than in patent cases, where the "fraud upon the court" doctrine has been generously interpreted because Patent Office procedures are ex

parte and patent monopolies may have consequences far beyond the parties to a particular infringement proceeding, * * * the fraud must involve corruption of the judicial process itself.

> \*　　\*　　\*　　\*　　\*　　\*

> To bring himself within this narrow exception to the one-year limitation in Rule 60(b) Gekas relies heavily on the alleged misconduct by Judge McCormick in participating in an ex parte contact. If there was such a contact, however, all it concerned (so far as we have been given any reason to believe) was the scheduling of a hearing. Given the rush that everyone was in and the fact that bankruptcy proceedings are normally not adversary and are handled less formally than ordinary lawsuits, it is hard to see any but a technical violation of the rules that forbid (with limited exceptions not applicable here) ex parte contacts with bankruptcy judges. *See,* e.g., Bankr.R. 9003. The fact that Judge McCormick was found to have committed a serious infraction of those rules in an unrelated case cannot bridge the gap and demonstrate fraud in this case. Moreover, as we have stressed recently, a disciplinary violation calls for discipline, not nullification of judicial proceedings, *see Bash v. Firstmark Standard Life Ins. Co.,* 861 F.2d 159, 161, 162 (7th Cir.1988); for nullification there must be prejudice to a party, and none has been shown here.

> As for the allegations concerning the shill bidder and the secret plan to channel the Sea–Lok assets to Pipin (really one allegation—Pipin's secret involvement), we have difficulty understanding what the fuss is about. It is commonplace, and involves no impropriety, for the debtor himself to bid at a foreclosure sale. *See* 4B Collier, *supra,* 70.98 at p. 1170. Of course it would be improper for Pipin, controlling Met–L–Wood as he did, to use his control to walk off with its principal assets for a song, shucking off

---

**37.** *Carter v. Dolce,* 741 F.2d 758, 760 (5th Cir. 1984). See also the Court's prior discussion of the plaintiff's involvement in the *Collins* case, the nature and type of discovery sought, and the concern of the bankruptcy court regarding plaintiff's actions in this and the *Collins* case. *Pickford v. Talbott,* 225 U.S. 651, 658, 32 S.Ct. 687, 689–90, 56 L.Ed. 1240 (1912).

the unsecured creditors in the process. That would violate the fiduciary obligation that Pipin, controlling the debtor in possession, owed Met–L–Wood's creditors. * * * This would be fraud against the creditors, to be sure, but we do not see how it could be thought fraud against the court without erasing the distinction between two concepts that Rule 60(b) carefully separates. Gekas's Rule 60(b) motion was properly dismissed as untimely.[38]

In Wright & Miller, *Federal Practice and Procedure: Civil § 2870,* the author discusses the difference between fraud upon the court and fraud under Rule 60(b)(3):

A number of courts have accepted the suggestion of a distinguished commentator that "fraud upon the court" is fraud that "does, or attempts to, defile the court itself," or that is "perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

\*      \*      \*      \*      \*      \*

Any fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense. That cannot be the sense in which the term is used in the final saving clause of Rule 60(b). The remedy for most cases of fraud must continue to be by motion under Rule 60(b)(3) or by an independent action, subject to the procedural limitations applicable to those remedies. The draftsmen must have conceived of "fraud upon the court," as they used that phrase, as referring to very unusual cases involving "far more than an injury to a single litigant."

Thus the courts have refused to invoke this concept in cases in which the wrong, if wrong there was, was only between the parties in the case and involved no direct assault on the integrity of the judicial process. Nondisclosure by a party or his attorney has not been enough.

The cases in which it has been found that there was, or might have been, a "fraud upon the court," for the most part, have been cases in which there was "the most egregious conduct involving a corruption of the judicial process itself." The concept clearly includes bribery of a judge or the employment of counsel in order to bring an improper influence on the court. (footnotes omitted).

There is no allegation of fraud or improper conduct on the part of Judge Steen. There was no attempt to corrupt Judge Steen through bribery or other improper influence. To characterize the alleged misrepresentations of defendants as fraud on the court would effectively obliterate the distinction between fraud on the court and Rule 60(b)(3) fraud and would thereby eliminate the one year time limitation set forth in Rule 60(b)(3). Therefore, the Court finds defendants' alleged conduct, even if proven true, did not constitute fraud on the court for purposes of Rule 60(b).

### 3. Does plaintiff have a claim under Rule 60(b)(3)?

If plaintiff has a right to recover under Rule 60(b), he must do so under Rule 60(b)(3). As noted earlier, Rule 60(b)(3) allows a court to vacate a judgment for fraud if the motion is made within a reasonable time but not more than one year after the judgment or order was entered. The bankruptcy court issued its order on February 13, 1985. Plaintiff's second amended complaint seeking a rescission of the sale was not filed until November 6, 1987, some 33 months after final judgment. Because the amended complaint (which the Court will assume for purposes of argument to be a Rule 60(b) motion) may not relate back to the date of the original complaint, plaintiff has not timely filed his motion within the one year time limit. Even if the motion could relate back, the Court further finds the motion was not filed within a reasonable time. The one year limitation set forth in Rule 60(b) is the extreme limit which a court can allow for the filing of a 60(b)(3) motion. Thus, in *Lairsey v.*

---

**38.** *Met–L–Wood,* 861 F.2d at 1018–19.

*Advance Abrasives Co.,* 542 F.2d 928, 930 (5th Cir.1976), the Fifth Circuit stated:

> Rule 60(b) states:
>
>> The motion shall be made within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or taken.
>
> It makes no mention of the period for noticing appeal or of whether notice of appeal has been filed. Instead it sets up an outside time limit of one year, which plaintiffs in this case easily met, and prescribes a "reasonable time" standard which by its nature invites flexible application in varying situations. As Professors Wright and Miller state:
>
>> "What constitutes reasonable time must of necessity depend upon the facts in each individual case." The courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and they consider whether the moving party had some good reason for his failure to take appropriate action sooner.
>
> 11 Wright & Miller, Federal Practice & Procedure § 2866, at 228–29 (footnote omitted).

The courts have also held that "a reasonable time" may conceivably be less than one year from the date the judgment was entered.[39]

■ Considering the facts in this case, the Court finds plaintiff's motion was not filed within a reasonable time for the following reasons. Plaintiff was suspicious of the transaction prior to the time the bankruptcy court approved the sale of his stock. Numerous depositions were taken in the bankruptcy court as well as the South Carolina litigation prior to the sale. Subsequent to the sale, fourteen depositions were taken and documents were subpoenaed from six non-party witnesses and from every defendant in this case. This information could also have been obtained prior to the sale of the stock. The bankruptcy court approved the trustee's request to have special counsel on February 14, 1985, and the Stone Pigman firm was hired on April 19, 1985. The bankruptcy court approved the Rule 2004 depositions on October 16, 1985. It is not clear why there was a delay of almost six months between the appointment of counsel and the Rule 2004 deposition request. The Court believes counsel had ample time to investigate this matter and to file a Rule 60(b)(3) motion earlier than the original date this suit was filed. The rights of numerous parties were prejudiced by plaintiff's failure to file this motion earlier, assuming the motion was filed at all. "Motions for relief from final judgment are addressed to the sound discretion of the district court, guided of course by accepted legal principles."[40] Exercising this broad authority and applying established legal principles, the Court finds plaintiff is not entitled to relief under Rule 60(b)(3).

### E. *Conclusion*

The Court has considered the contentions of all of the parties whether discussed herein or not. For reasons set forth above, defendants' motion for summary judgment is GRANTED. This suit shall be dismissed with prejudice at plaintiff's costs.

Judgment shall be entered accordingly.

---

**39.** *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601 (7th Cir.1986); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648 (2d Cir.1979).

**40.** A motion for relief from judgment provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances and the ruling of the trial court is set aside only upon a clear showing of abuse of discretion. *Gulf Coast Fans v. Midwest Elec. Importers,* 740 F.2d 1499 (11th Cir.1984); *Hand v. United States,* 441 F.2d 529, 531 (5th Cir. 1971).